[No. 48685-9.   En Banc.   July 28, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK FERGUSON, *Petitioner*.

*Taggart & Phillips, Inc., P.S.,* by *Charles B. Phillips,* for petitioner.

*Arthur R. Eggers, Prosecuting Attorney,* and *Michael S. Mitchell,* for respondent.

DIMMICK, J.—Petitioner Frank Ferguson was convicted of indecent liberties. In this appeal he challenges several evidentiary rulings made by the trial court. The Court of Appeals upheld the conviction. We affirm.

Ferguson was convicted by a jury of knowingly causing his 10–year–old stepdaughter to have sexual contact with him. RCW 9A.44.100(1). The principal witness at trial was petitioner's stepdaughter. She testified that her stepfather

forced her to have sexual contact with him on many occasions. Her testimony was very detailed as to the nature and extent of the contact. She even testified as to her attempts to stop the ongoing activity, *i.e.,* hiding a jar of Vaseline when petitioner asked for it. Petitioner attempted to attack the victim's credibility by asserting she was a liar and a thief. He also attempted to prove that his stepdaughter learned the things she testified to by reading magazines and observing her parents engage in sexual intercourse. Petitioner, however, did not attempt to prove that the particular type of conduct the victim described was learned in this fashion.

Various aspects of the victim's testimony were corroborated and verified by her mother, a schoolteacher, a caseworker and a psychologist.

Petitioner raises the following issues:

## I
### Photographs and Wife's Testimony Regarding Acts Occurring at the Time the Photographs Were Taken

Petitioner challenges Mrs. Ferguson's testimony that she witnessed sexual contact between petitioner and the victim. She testified that one such incident occurred when the victim was 3 years old and the whole family was posing nude for photographs. At that time petitioner told his stepdaughter to put her mouth on his penis. The 7–year–old photographs were introduced over petitioner's objection during Mrs. Ferguson's testimony.

■ Admissibility of evidence requires, first, an analysis of the relevancy of the evidence and, second, a balancing of the prejudicial effect and probative value of that evidence. *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982). The challenged testimony and photographs are relevant and thus satisfy the first part of this test.

■ This court has often invoked an exception in similar cases to permit evidence of collateral sexual misconduct when it shows a lustful disposition directed toward the

offended female. *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976); *State v. Leohner*, 69 Wn.2d 131, 417 P.2d 368 (1966); *State v. Fischer*, 57 Wn.2d 262, 356 P.2d 983 (1960); *State v. Thorne*, 43 Wn.2d 47, 260 P.2d 331 (1953).

> Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged.
>
> . . . The important thing is whether it can be said that it evidences a sexual desire for the particular female. 2 Wigmore on Evidence (3d ed.) 367, § 399, says:
>
> "The *kind of conduct* receivable to prove this desire at such prior or subsequent time is *whatever would naturally be interpretable* as the expression of sexual desire.
>
> "Sexual intercourse is the typical sort of such conduct, but indecent or otherwise *improper familiarities* are equally significant."

*Thorne*, at 60–61. Mrs. Ferguson's testimony regarding the sexual contact between the petitioner and victim is clearly relevant pursuant to this rule.

The photographs were admitted during Mrs. Ferguson's testimony and were only referred to in relation to that one particular incident of sexual contact. The photographs thus corroborated Mrs. Ferguson's testimony and were relevant. In fact, the petitioner concedes such possible corroborative effect in his brief.

The petitioner argues, however, that the photographs and the incident itself were too remote in time and thus prejudicial. He asserts that such prejudicial effect outweighs any probative value making the evidence inadmissible. We rejected a similar argument in *State v. Thorne, supra,* wherein the trial court admitted evidence of the defendant's prior sexual misconduct with his daughter to show his lustful disposition toward her. We held, at page 61:

> "The *limits of time* over which the evidence may range must depend largely on the circumstances of each case,

and should be left to the discretion of the trial Court." 2 Wigmore on Evidence (3d ed.) 367, § 399.

Further, the balancing of the relevancy and desirability of evidence against its harmful effect is a matter peculiarly within the trial court's discretion. *State v. King,* 71 Wn.2d 573, 576, 429 P.2d 914 (1967). In light of the entire record, we conclude that the trial court did not abuse its discretion in admitting the photographs and the wife's testimony.

Petitioner also contends the photographs were prejudicial because some jurors may find offensive the fact that petitioner was a nudist. In testimony unrelated to the photographs, however, petitioner testified that he often lounged around the home in the nude, and personally thought there was nothing wrong with doing so. Accordingly, the photographs would not seem to have any additional effect on the jury and again in light of the entire record the trial court did not abuse its discretion in admitting the evidence.

## II
### TEACHER'S STATEMENT IDENTIFYING PETITIONER AS OFFENDER

At trial the victim's teacher testified as follows:

Q. On February 8th, did you have occasion to have a discussion with [the victim]?
A. Yes.
Q. Where did that discussion take place?
A. Outside my classroom in the hallway.
Q. Very generally, what was the gist of that discussion?
A. It concerned her father.

Defense counsel objected to the reference made to petitioner and the trial judge overruled the objection. The prosecutor repeated the question and then the teacher testified that the conversation she had with the victim concerned "some sexual advances".

The general rule in this state is that in criminal trials for sex offenses the prosecution may present evidence that the victim complained to someone after the assault. *State v. Goebel,* 40 Wn.2d 18, 25, 240 P.2d 251 (1952). The rule admits only such evidence as will establish that the com-

plaint was timely made. Excluded is evidence of the details of the complaint, including the identity of the offender and the nature of the act. *State v. Murley,* 35 Wn.2d 233, 237, 212 P.2d 801 (1949) and cases cited therein. Accordingly, the statement identifying the offender as the victim's "father" should not have been admitted.

A counterpart to this rule is that the weight of the harm claimed to have been caused by reference to the alleged offender's identity may be too slight to constitute reversible error. *State v. Conklin,* 37 Wn.2d 389, 223 P.2d 1065 (1950). The court in *Conklin* held that a witness' testimony which referred to the offender's identity was not reversible error because "[t]here is no risk here, then, of bolstering a disputed identification in admitting the evidence in question. There was never any dispute over the offender's identity. The issue was over what the appellant did or did not do." *Conklin,* at 391.

■ The rationale of *Conklin* applies in this case. Identity of the offender was never at issue. It was never contended that someone other than petitioner engaged in the acts complained of. There was no risk that the teacher's testimony would bolster a disputed identification. The issue in this case was what petitioner did or did not do. The teacher's inadvertent reference to petitioner does not constitute reversible error.

### III
### TEACHER'S TESTIMONY REGARDING SPECIFIC INSTANCES OF CONDUCT RELATING TO VICTIM'S CREDIBILITY

Petitioner's next claimed error relates to testimony by the victim's teacher during the State's rebuttal. Petitioner and other witnesses testified that the victim habitually lied and stole, did not comprehend what was going on, was emotionally disturbed and that her mental age was approximately 2 years behind her chronological age. During rebuttal the teacher testified on direct examination to the effect

that the victim stopped stealing things when the teacher made an agreement with her and that the victim's lying at school related to her stealing or her merely agreeing with the other children's wild stories. Petitioner argues that credibility of a witness may be supported only by evidence of reputation of truthfulness, ER 608(a), and this testimony was not reputation testimony. He further argues that the testimony is not admissible under ER 608(b) which allows evidence of specific instances of conduct to support a witness' credibility. ER 608(b)(2) allows testimony relating to the truthfulness of another witness to be elicited on cross examination only. The testimony at issue here was during direct examination.

■ The testimony was not admissible pursuant to ER 608.[1] We now consider whether that evidentiary ruling constitutes reversible error. The error is not of constitutional magnitude and thus we do not apply the "harmless beyond a reasonable doubt" test. Rather, we apply the rule that the error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected. *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

After a review of the entire record, we are convinced the outcome of the trial would not have been affected had the challenged testimony been excluded. Other evidence, supporting the victim's credibility, corroborated her testimony. Furthermore, examining the testimony itself, the claimed prejudice is not apparent. The teacher actually supported petitioner's claim that the victim had lied and stolen objects. She did not testify as to any specific instances when the victim told the truth nor did she testify that the victim stopped lying and stealing entirely.

---

[1]The trial court may have relied on *State v. Jensen,* 5 Wn. App. 636, 489 P.2d 1136 (1971), which found the admission of such evidence to be desirable and error free. *Jensen* was decided prior to the adoption of ER 608.

## IV
### CASEWORKER'S TESTIMONY REGARDING PRIOR CONSISTENCY

■ Caseworker Dave Williams testified on cross examination that the victim had related the instances of sexual contact consistently throughout the investigational process. The only objection made by petitioner at trial was that this testimony exceeded the scope of the direct examination. ER 611(b). Petitioner, however, analyzes the question pursuant to the rule addressing the admissibility of evidence of the character and conduct of a witness. ER 608. No objection to the testimony was made at trial on the basis of ER 608. Accordingly, we will not consider petitioner's challenge based on ER 608 as it is well established that

> [i]f a specific objection is overruled and the evidence in question is admitted, the appellate court will not reverse on the basis that the evidence should have been excluded under a different rule which could have been, but was not, argued at trial.

5 K. Tegland, Wash. Prac., *Evidence* § 10, at 25 (2d ed. 1982); ER 103. The claimed error also does not warrant review as an error raised for the first time on appeal under RAP 2.5. Accordingly, we do not consider petitioner's argument based on ER 608.

■ Petitioner's challenge based on ER 611(b) is without merit. The cross examination was proper and within the scope of direct examination. On direct examination Williams was questioned about the occasions on which he interviewed the victim and her response regarding a specific incident. As noted, on cross examination he testified that on those occasions the victim had related the events consistently. The rule in this state is that "when, in the direct examination, 'a general subject is unfolded, the cross–examination may develop and explore the various phases of that subject.'" *State v. Robideau,* 70 Wn.2d 994, 997, 425 P.2d 880 (1967) (quoting *Wilson v. Miller Flour Mills,* 144 Wash. 60, 256 P. 777 (1927)). *See* Comment to ER 611. The trial court may exercise its discretion in determining the

scope of inquiry and can grant considerable latitude in cross examination. ER 611(b); *State v. Robideau, supra; State v. Jeane,* 35 Wn.2d 423, 431, 213 P.2d 633 (1950). The challenged cross examination was proper pursuant to the foregoing rules.

## V
### VICTIM'S INABILITY TO RECALL SPECIFIC DATES

The State's information charged petitioner with indecent liberties during a period of time intervening between September 1979 and February 1980. Prior to 1978 the family had lived outside the state of Washington. When the victim testified, she could not remember the exact dates on which her father had sexual contact with her. She could only generalize. Petitioner contends that all of the victim's testimony should be excluded since some of the events she testified about could have occurred outside the time frame charged and thus outside the state of Washington. He further contends that because she could not testify as to particular dates, some of the events which she testified about would be too remote and thus prejudicial.

It is clear from the victim's testimony along with corroborating testimony of other witnesses that some sexual contact between the victim and petitioner occurred in the state of Washington and within the time frame charged. Much of the victim's testimony related to recent events. The victim specifically testified that incidents of sexual contact occurred while her mother was away at school in the evenings. Mrs. Ferguson testified that she was in school at Walla Walla during the time frame at issue. The victim was only 10 years old and emotionally disturbed. To require her to pinpoint the exact dates of the oft–repeated incidents of sexual contact would be contrary to reason. As a matter of fact, the testimony did establish one specific date. The victim testified that she reported one incident to her teacher the day after it occurred. The teacher then testified as to the exact date on which the victim reported the sexual abuse. The fact that some of the sexual contact may not

have occurred within the specified time frame is not fatal to the victim's testimony.

■ As noted above, it is well established that additional acts of indecent liberties are relevant to prove lustful disposition toward the victim, *State v. Golladay, supra; State v. Leohner, supra,* and the limits of time over which the evidence may range is within the discretion of the trial court. *State v. Thorne, supra.* The trial court did not abuse its discretion in allowing the victim to testify even though she could not specify the exact dates of other occasions on which petitioner sexually abused her.

## VI
### SEMEN–STAINED TOWEL

The victim testified that after petitioner had anal intercourse with her he would clean himself with a towel and she would do the same. Mrs. Ferguson testified as follows about towels which she found in the home:

Q. Mary, when you and your husband used to have intercourse, was there anything unusual about the way that took place or what happened afterwards or anything?

A. Well, he always insisted on using a towel all the time to clean himself up with afterwards and to clean me up with, . . .

. . .

Q. Mary, did you ever on the occasions when you came back from school notice anything unusual about the house?

A. Yes, I did. I'd come home and find a towel wadded up and thrown on the floor in the living room that hadn't been there before, and I'd just pick it up and throw it in the washing machine. It seemed unusual to me. I noticed something was on it that looked like semen, but I can't be positive.

Q. Do you remember—maybe you said and I just didn't catch it—where these towels might have been?

A. Right on the floor in front of the couch, in front of the couch that I would sleep on, in front of the couch that he would sleep on.

Petitioner contends that this testimony was improper

because Mary Ferguson does not possess the requisite scientific skills to identify a semen stain and thus was not competent to testify. Mary Ferguson did not testify that the stains were in fact semen stains. She testified that they appeared to be semen stains based upon her prior experience. This testimony is clearly within the scope of ER 701, which allows opinion evidence by lay witnesses. ER 701 provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Accordingly, the trial court did not err in allowing Mary Ferguson to give her opinion as to the nature of the stains on the towels.

In conclusion, all of petitioner's assignments of error are without merit. The error committed by the trial court, being de minimis, did not prejudice the outcome of petitioner's trial. Accordingly, we affirm petitioner's conviction.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—Defendant Frank Ferguson was convicted by a Walla Walla jury of the crime of indecent liberties (RCW 9A.44.100(1)). The information alleged that defendant knowingly caused his 10–year–old stepdaughter to have sexual contact with him sometime between September 1979 and February 1980.

Prior to trial, Ferguson filed a motion in limine to exclude nude photographs of himself, his stepdaughter, and his infant son, taken 7 years prior to the alleged incidents. In addition, he moved to suppress the testimony of his wife, Mary, regarding an alleged attempt on Ferguson's part to have his stepdaughter perform oral sodomy on his person at the time the photographs were taken. The trial court denied Ferguson's motions.

During the trial, caseworker Dave Williams testified that the victim's story had been "extremely consistent throughout the entire investigation of the case". The stepdaughter's schoolteacher, Kathleen L. Emmert, over objection, was allowed to testify that she and the victim had a discussion about "sexual advances" toward her and that the discussion concerned "her father". The school psychologist testified as to the stepdaughter's subnormal intellectual capacity and the emotional problems she had been experiencing at school. Both the schoolteacher and the victim herself testified as to her propensity to lying and/or misstating the truth. The victim, however, said she was much improved in lying and that what she testified about concerning her stepfather was true.

Ferguson assigns error to the introduction of the following evidence:

1. Nude photographs of the defendant and the victim taken 7 years before the alleged incident;

2. Teacher Kathleen Emmert's testimony regarding the stepdaughter's statement that her stepfather was the culprit;

3. Other testimony of Emmert regarding truthfulness of the stepdaughter;

4. Testimony of caseworker Dave Williams regarding the consistency of the stepdaughter's testimony;

5. Testimony by defendant's wife regarding sex acts which defendant allegedly performed when these photographs were taken.

I

The decision to admit the nude photographs was within the discretion of the trial court, balancing the probative value of the photographs against their prejudicial effect under ER 403. *State v. King,* 71 Wn.2d 573, 429 P.2d 914 (1967). Evidence of past bad acts is relevant for limited purposes, such as showing a common scheme or plan or demonstrating "lustful disposition". *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328

(1976). The photographs were 7 years old, having been taken when the stepdaughter was 3. Only one of the six photographs shows Ferguson with the victim sitting on the floor, with his arms around her and his son. It is difficult to believe this photograph demonstrates in any manner Ferguson's "lustful disposition" toward his stepdaughter. Ferguson's wife testified that at the time of the taking of the photograph Ferguson had her daughter kiss his penis. When the victim testified, however, she emphatically denied the incident. I believe the Court of Appeals was correct in concluding the photographs were not relevant and should not have been admitted.

The ultimate issue thus becomes whether the introduction of the photographs was harmless error. Error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

In its majority opinion, the Court of Appeals states that, considering the entire record, the impact the photos may have had was minimal. As Judge Roe points out in his Court of Appeals dissent, however, there was evidence casting doubt upon the victim's credibility—she had a self-admitted problem with stealing and lying and was somewhat emotionally disturbed. There was also evidence admitted to show the victim could have obtained enough information from sexually oriented magazines left around her home to concoct the story she testified to. Additionally, the nude photos, together with the testimony that the Fergusons were practicing nudists within the confines of their home, may have offended the jurors, thus prejudicing the outcome of the trial. For these reasons, I cannot conclude this error of admission was harmless.

## II

I believe the trial court also erred in admitting testimony of the victim's teacher regarding the conversation in which

the victim discussed sexual advances made by her stepfather. At trial the teacher testified as follows:

Q. On February 8th, did you have occasion to have a discussion with [the victim]?
A. Yes.
Q. Where did that discussion take place?
A. Outside my classroom in the hallway.
Q. Very generally, what was the gist of that discussion?
A. It concerned her father.

The trial judge then overruled defense counsel's objection and allowed the teacher to testify that the conversation she had with the victim concerned "some sexual advances". Report of Proceedings, at 13–14.

The "hue and cry" doctrine, as adopted in this state, allows the prosecution to present evidence that the victim complained to someone within a reasonable time after the assault, so long as the witness does not tell what the prosecutrix said concerning the circumstances and details of the assault. *State v. Goebel,* 40 Wn.2d 18, 25, 240 P.2d 251 (1952). Theoretically this evidence lessens the probability that the victim fabricated the story. *State v. Murley,* 35 Wn.2d 233, 212 P.2d 801 (1949). Excluded, however, is "evidence of the details of the complaint, including the identity of the offender and the nature of the act". *Murley,* at 237. *See also State v. Hunter,* 18 Wash. 670, 672, 52 P. 247 (1898); *State v. Griffin,* 43 Wash. 591, 595, 86 P. 951 (1906). Thus, the trial court clearly erred in allowing the teacher to testify that the father was the alleged offender.

The prosecution argues that the admission of this testimony was at most harmless error, as identity was not an issue in the trial and the victim later testified as to identity. In *State v. Conklin,* 37 Wn.2d 389, 223 P.2d 1065 (1950), an indecent liberties prosecution, this court held that although the testimony of the complainant regarding the defendant's conduct toward her was improper, it was not reversible error. Immediately following the testimony, the plaintiff properly brought out all of the details of the offense charged and named the defendant as the offender. The

*Conklin* court stated at page 391:

> To permit a third party witness to testify as to the details of the prior out–of–court complaint, would incur a risk that the jury might not limit such evidence to the question of whether or not a complaint had been made, and might wrongfully give it some weight as corroboration of the complaining witness' present testimony.

*Conklin* is clearly distinguishable here. The *Conklin* court emphasized there was no risk of "bolstering a disputed identification" in admitting the evidence. *Conklin,* at 391. In *Conklin,* the complaining witness, after the testimony of her prior out–of–court complaint, then immediately testified as to the details of the alleged offense, including the defendant's identity. This did not occur in the present case, as the teacher testified before the victim, and there was another witness between the two testimonies. In addition, in *Conklin,* the stepfather was present at the time the complaining witness identified him as the offending party.

### III

The trial court also erred in permitting a third party witness to testify on cross examination as to the consistency of the victim's "story" when retold to him on several separate occasions.

ER 611(b) provides that cross examination "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness". Additionally, ER 608 provides that the credibility of a witness may be attacked or supported by evidence in the form of reputation, (1) when the evidence refers only to character for truthfulness or untruthfulness, and (2) the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

Dave Williams was allowed to testify on cross examination as follows:

Q. Isn't it fair to say that all those times that you have heard her relate the story that she related, it has been consistent?

MR. PHILLIPS: I'd object, Your Honor, as not being in the scope of the direct.

THE COURT: Objection overruled.

A. Yes, she's been extremely consistent throughout the entire investigational process of this case.

Report of Proceedings, at 82. Obviously, this testimony does not relate to the victim's character for truthfulness, but is relevant only in establishing her *consistency* in retelling her story to the witness. Its admission was prejudicial error.

### CONCLUSION

The alleged act of the stepfather having indecent liberties with his young stepdaughter is a heinous crime, for which he should be substantially punished if found guilty, after a fair trial. Perhaps I could dismiss a single error on the basis that it was harmless. In the aggregate, however, I find that the trial court erroneously admitted (1) very humiliating, nonrelevant photographs showing the defendant in the nude; (2) the teacher's improper testimony identifying the stepfather as sexually abusive of his stepdaughter; (3) caseworker Williams' testimony as to the credibility of the victim's testimony; and (4) the testimony of teacher Emmert regarding the truthfulness of the stepdaughter. These errors resulted in the introduction of a substantial quantity of evidence which cumulatively, in my opinion, prejudiced Ferguson's right to receive a fair trial.

We must preserve constitutional guaranties or they will soon become meaningless, and a fair trial unattainable, even in America.

For these reasons, I would reverse and remand for a new trial.

UTTER, J., concurs with DORE, J., as to issue I.

Reconsideration denied September 20, 1983.