# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76045-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KARAMBA CEESAY, | ) | |
| | ) | FILED: May 21, 2018 |
| Appellant. | ) | |

VERELLEN, J. — A jury convicted Karamba Ceesay of indecent liberties. The victim's mother and husband testified that she reported the sexual assault to them on the same day she was assaulted. The fact of complaint doctrine allows the State to present evidence that the victim complained to someone soon after a sexual assault. These complaints were timely, and the State did not elicit any details of the assault. It was within the trial court's discretion to admit both.

In closing argument, the prosecutor suggested that the victim's testimony at trial must have been consistent with a statement she gave to a detective, even though the substance of the statement was not in evidence. The State concedes the comment was improper. We agree. But because the jury was immediately instructed as to the burden of proof and the State presented compelling evidence

at trial, Ceesay does not establish that the improper comment likely affected the outcome of the trial.

The cumulative error doctrine does not apply to a single error. Ceesay's cumulative error argument fails.

Therefore, we affirm.

## FACTS

In early 2014, M.T. was diagnosed with cervical cancer. She was told she would need a hysterectomy. On September 8, 2014 she checked into the hospital for surgery. M.T. was cared for by a nurse and Ceesay, a patient care technician, on September 8 and 9.

After surgery, M.T. woke up in the recovery room in pain and was admitted to a room on the post-surgical floor at around 3:30 p.m. M.T.'s pain subsided after surgery but never completely went away. M.T. received two five milligram pills of Percocet at 6:09 p.m. and 8:01 p.m. on September 8 and at 12:28 a.m., 4:38 a.m., 8:10 a.m., and 11:37 a.m. on September 9. When M.T. received Percocet in the past, due to a cyst on her spine, it made her feel groggy but she still "had her wits about her."[1] She received a two milligram intravenous dose of morphine at 10:49 p.m. on September 8 and none on September 9. That amount of morphine would dissipate within three to four hours. M.T. was tired after the surgery but could still converse and understood what was going on around her.

---

[1] Report of Proceedings (RP) (Sept. 6, 2016 at 138).

2

On the morning of September 9, M.T. asked if she could smoke a cigarette outside, and the nurse gave her permission to go with Ceesay to the courtyard. The nurse observed that at that time, M.T. was not confused or disoriented and appropriately answered the nurse's questions. The nurse had no concerns about side effects of the medications. Ceesay talked to M.T. about the passage of the marijuana law and asked her if she had ever smoked marijuana. Ceesay asked M.T. where she lived and how to get there. Ceesay told M.T. he would like to get to know her better but did not want to upset her husband. Ceesay asked for M.T.'s phone number several times and later brought her a business card and had her write the number on it. M.T. testified that she did not want to provide the phone number but did not want to be rude, so she wrote it on the card. The card with M.T.'s number on it was recovered from Ceesay's wallet when he was arrested.

Once M.T. was back in her room, at 6:37 a.m. on September 9, Ceesay told her he needed to perform a bladder scan. He told her to lift her gown above her waist. M.T. had no clothing on under her gown, so she was exposed from the waist down. Ceesay told M.T. to bend her knees and spread her legs. Ceesay then rubbed M.T.'s pubic hair and vagina with his bare fingers. He then ran the scanner lightly against her stomach one time and then left the room.

Later that morning, the patient care technician who had replaced Ceesay performed a bladder scan on M.T. This technician had M.T. lay flat, never exposed her private area, and did not ask M.T. to bend her knees or spread her

3

legs. The technician used the scan to make multiple strokes over M.T.'s abdomen to find the right spot. The technician wore gloves. After this bladder scan, M.T. realized what Ceesay had done.

At trial, the nurse, who had previously been a patient technician, and another patient technician explained that during a bladder scan, a patient must lay flat on their back with their bed flat. The nurse or technician wears gloves and does not have direct contact with the patient's skin. Both witnesses testified that the procedure would never involve asking a patient to spread their legs or bend their knees and that the person conducting the scan would never need to expose or touch a patient's vaginal area. The nurse or technician would then move the scanner back and forth over the lower abdomen.

On the way home from the hospital that morning, M.T. told her husband what Ceesay had done. When she got home, M.T. also told her mother. M.T. called her doctor and later spoke to a patient advocate from the hospital.

Detective Inman from the Bellevue Police Department went to M.T.'s home and took a statement from her. Inman arrested Ceesay.

A jury convicted Ceesay of indecent liberties with a vulnerable victim aggravator.

Ceesay appeals.

## ANALYSIS

### I. Witness Testimony

#### A. Fact of Complaint Doctrine

Ceesay argues the trial court erred in admitting M.T.'s statements to her mother and to the patient advocate under the fact of the complaint rule.

"The trial court's decision on the admissibility of evidence may be reversed only on a showing of manifest abuse of discretion."[2]

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted.[3] Hearsay is inadmissible unless it falls within an exception to the rule.[4] One exception is the fact of complaint doctrine.[5]

The hearsay exception for the fact of the complaint doctrine "allows the prosecution in sex offense cases to present evidence that the victim complained to someone after the assault. But '[t]he rule admits only such evidence as will establish that the complaint was timely made.'"[6] The rule excludes "evidence of

---

[2] State v. Ackerman, 90 Wn. App. 477, 481, 953 P.2d 816 (1998). As noted by Ceesay in his opening brief, a question of law about interpretation of an evidentiary rule is reviewed de novo. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). But otherwise, the trial court's application of the rule is reviewed for abuse of discretion.

[3] ER 801(c).

[4] ER 802.

[5] State v. DeBolt, 61 Wn. App. 58, 63, 808 P.2d 794 (1991).

[6] State v. Chenoweth, 188 Wn. App. 521, 532, 354 P.3d 13 (2015) (alteration in original) (quoting State v. Ferguson, 100 Wn.2d 131, 135-36, 667 P.2d 68 (1983)); see State v. Murley, 35 Wn.2d 233, 237, 212 P.2d 801 (1950) ("[W]e permit the state to show in its case-in-chief when the woman first made a complaint consistent with the charge." (Emphasis omitted.)).

the details of the complaint, including the identity of the offender and the nature of the act."[7]

Here, the trial court admitted testimony from M.T.'s husband and mother that on the same day Ceesay assaulted M.T., she told each of them she had been sexually assaulted. The husband and the mother did not include details about the assault or the defendant.

Ceesay argues that testimony from multiple fact of complaint witnesses is inadmissible but does not cite compelling authority that only one witness can testify regarding fact of complaint. Washington courts have affirmed convictions when multiple witnesses testified under the fact of complaint doctrine.[8] It is within the discretion of the court to determine whether more than a single fact of complaint witness may testify. Ceesay also suggests he did not argue M.T. fabricated her story, merely that she *misinterpreted* what she felt during the bladder scan and therefore, without a claim of recent or intentional fabrication, the testimony was inadmissible. But this court has recognized the fact of a prior disclosure can be "admissible even though the defendant did not expressly raise as an issue the timeliness of her complaint."[9] And as our Supreme Court

---

[7] Ferguson, 100 Wn.2d at 136.

[8] See generally DeBolt, 61 Wn. App. at 63 (indecent liberties case, statements made to the victim's sister and social worker were both admitted under the fact of complaint doctrine); State v. Ackerman, 90 Wn. App. 477, 481-82, 953 P.2d 816 (1998) (child molestation case where the court upheld the admissibility of fact of complaint testimony from three witnesses).

[9] State v. Alexander, 64 Wn. App. 147, 152, 822 P.2d 1250 (1992).

explained in State v. Murley, a jury might assume that if a victim did not complain of a sexual assault, then perhaps it did not occur.[10] Here, M.T. saw both her husband and mother on the day of the assault. A jury could assume she would tell them if she had been assaulted. The court did not abuse its discretion in allowing both the husband and the mother to testify that M.T. reported the assault.

*B. Statement of Identification*

Ceesay contends M.T.'s statement to the patient advocate was inadmissible.

Here, the advocate testified that on September 16, 2014, she received a complaint from M.T. that Ceesay had assaulted her. The trial court overruled Ceesay's objection, mentioned the fact of complaint, and ruled:

> So I'm noting the defense objection, but I think this is admissible for certain, in my mind, as a statement that is not, in fact, offered for the truth, because no particular assertion was offered.
>
> . . . .
>
> But I also have a feeling that even if there were an assertion, it would fit under one of the exceptions to the hearsay rule, like the medical diagnosis and treatment exception. And I think the State's right. It may be nonhearsay as a statement of identification.[11]

Ceesay argues the statement was inadmissible under the fact of complaint doctrine because it named him. The fact of complaint doctrine excludes "evidence of the details of the complaint, including the identity of the offender and the nature

---

[10] 35 Wn.2d 233, 236-37, 212 P.2d 801 (1950).

[11] RP (Sept. 7, 2016) at 306.

of the act."[12] Therefore, this testimony was not admissible under the fact of complaint doctrine.

We may affirm on any grounds supported by the record.[13] A statement of identification made after perceiving a person is not hearsay.[14] The rule is based on the belief that an out-of-court statement of identification occurring closer in time to the crime than an in-court identification is more reliable.[15] Ceesay suggests the rule does not apply here because "M.T. did not identify Ceesay to the patient advocate after seeing him or a photograph of him or viewing him in a lineup,"[16] but the rule is not strictly limited to statements of identification made during a lineup or upon viewing a photomontage.[17]

Ceesay argues that his identity was not at issue. The medical records showed Ceesay conducted the bladder scan when M.T. alleged the sexual assault occurred. M.T. testified that Ceesay sexually assaulted her. And Ceesay's

---

[12] Ferguson, 100 Wn.2d at 136.

[13] State v. Huynh, 107 Wn. App. 68, 74, 26 P.3d 290 (2001).

[14] ER 801(d)(1)(iii).

[15] State v. Bockman, 37 Wn. App. 474, 481-82, 682 P.2d 925 (1984).

[16] Br. of App. at 16.

[17] State v. Grover, 55 Wn. App. 252, 256, 77 P.2d 22 (1989) ("Appellant argues ER 801(d)(1) should be limited to admitting only statements of identification made by a witness during a line-up or upon viewing a photographic montage. We decline appellant's invitation to so narrowly construe the rule."); see also State v. Jenkins, 53 Wn. App. 228, 232, 766 P.2d 499 (1989) (identification of a vehicle in which a suspect drove away); State v. Bergen, 13 Wn. App. 974, 975, 538 P.2d 533 (1975) (identification of items found in suspect's home); State v. Stratton, 139 Wn. App. 511, 517, 161 P.3d 448 (2007) (statements identifying the physical characteristics of a person).

defense at trial was not identity but that stress, exhaustion, and narcotic pain medication affected M.T.'s cognitive ability. Therefore, he contends the conversation between M.T. and the patient advocate as to his identity was not material. But in this context, admitting testimony placing Ceesay at the scene of the alleged assault was not an abuse of discretion.

We conclude the advocate's testimony was properly admitted as a statement of identification.

And for the same reasons argued by Ceesay that his identity was undisputed, any error admitting evidence of his identity was harmless.

Evidentiary errors that are not of constitutional magnitude are harmless unless within reasonable probabilities the outcome of the trial would have been different had the error not occurred.[18] If his identity was undisputed, admission of testimony of his identity had no reasonable probability of impacting the outcome of the trial.

We conclude any error in admitting the testimony of the patient advocate was harmless.

*II. State's Closing Argument*

Ceesay argues the prosecutor's closing argument unfairly bolstered M.T.'s testimony with reference to facts not in evidence. The State concedes the prosecutor's statement in closing argument was error, but argues any error was harmless.

---

[18] State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

M.T. testified that Ceesay sexually touched her when he performed the bladder scan. M.T. also testified that she provided a statement to a detective about the incident. Detective Inman testified that she took a 90-minute statement from M.T., but no one testified as to the content of that statement.

During the State's closing argument, the prosecutor stated, "The initial interview of [M.T.] done by Detective Inman was recorded. If [M.T.] had been inconsistent on the witness stand --."[19] Ceesay's counsel interrupted and objected on grounds of burden shifting and facts not in evidence. The court instructed the jury:

> So one more time, ladies and gentlemen, the burden of proof here is on the State, not on the defense. And the question's whether the State's evidence established their case or not. Having said that, I will allow the State to argue credibility. That's for the jury ultimately to decide, meaning it's up to you folks to decide on credibility. This is simply argument. Go ahead.[20]

The prosecutor continued, "If [M.T.] had been inconsistent, certainly that would have been pointed out to you. But she was consistent in the testimony that she gave you on the stand."[21]

Prosecutorial misconduct during closing argument has the potential to violate the accused person's right to a fair trial.[22] "To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's

---

[19] RP (Sept. 7, 2016) at 367.

[20] Id. at 367-68.

[21] Id. at 368.

[22] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).

conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[23] The "burden to establish prejudice requires the defendant to prove 'that there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'"[24] We review the prosecutor's "statements in the context of the entire case."[25]

We agree with the State's concession that the prosecutor's statements regarding the consistency of M.T.'s prior statement and implying that Ceesay had the burden to present such inconsistencies were improper. The question before us is whether the misconduct created a substantial likelihood that the jury's verdict was affected.

In State v. Boehning, the court reversed where the prosecutor referenced out-of-court statements by the victim.[26] But in that case, the prosecutor said the statements were disclosures of more serious allegations involving crimes that had been dismissed.[27] Here, unlike Boehning, the prosecutor said only that M.T. made a consistent statement to Detective Inman about the charges. The prosecutor did not imply the statement encompassed other more serious allegations.

---

[23] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[24] Id. at 443 (alteration in original) (internal quotation marks omitted) (quoting Magers, 164 Wn.2d at 191).

[25] Id.

[26] 127 Wn. App. 511, 513, 111 P.3d 899 (2005).

[27] Id. at 519-20.

In State v. Thorgerson, the prosecutor referenced additional statements a victim made out of court that were consistent with her testimony at trial.[28] The court acknowledged that the statements "might" have bolstered the victim's testimony,

> [b]ut the prosecutor's references were not to *additional* content, i.e., evidence that could form any additional basis on which to find the defendant guilty. Rather, the prosecutor referred to evidence that the victim made consistent statements to persons who did not testify to this fact at trial. Numerous individuals *did* testify at trial and their testimony was evidence that the victim told a consistent story about the molestation.[29]

Similarly here, the prosecutor's statements did not form any additional basis on which to find Ceesay guilty. Ceesay's theory of the case was that M.T. misconstrued or misinterpreted what happened to her, which is not negated by learning that she may have told the detective a consistent version of events to which she testified at trial. And immediately following Ceesay's objection, the trial court instructed the jury on the burden of proof. In addition to M.T.'s testimony, the jury heard testimony from M.T.'s husband and mother that M.T. reported the sexual assault to them the same day as the incident. And M.T.'s nurse testified that M.T. was not confused or disoriented and that she had no concerns about side effects from M.T.'s medications when M.T. went outside with Ceesay just before he performed the bladder scan.

---

[28] 172 Wn.2d 438, 443-48, 258 P.3d 43 (2011).

[29] Id. at 447.

We conclude the prosecutor's comments were improper but harmless as Ceesay has not established any likelihood that the outcome of the trial would have been different.

### III. Due Process Right to a Fair Trial

Ceesay contends cumulative error deprived him of his constitutional due process right to a fair trial, but that doctrine does not apply to a single error.[30]

Therefore, we affirm.

WE CONCUR:

Cox, J.

---

[30] State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003).