# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58436-1-II |
| Respondent, | |
| v. | |
| EDWARD THOMAS SCHINZING, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Edward T. Schinzing appeals his conviction for first degree child molestation. Schinzing argues that the trial court erred by (1) improperly commenting on the evidence when it instructed the jury that the alleged victim's testimony did not require corroboration, (2) admitting improper evidence when it allowed testimony about the victim's disclosures of the sexual abuse several years after the abuse occurred, and (3) using an offender score for sentencing that wrongfully included a federal arson conviction.

We affirm.

## FACTS

In 2021, R.L.S. disclosed that she had been sexually abused by her father, Schinzing, several years prior. R.L.S. was 11 years old at the time of the disclosure. Following an investigation, the State charged Schinzing with one count of first degree child molestation—domestic violence.

The case proceeded to a jury trial. In a pretrial motion in limine, the State sought permission to admit R.L.S.'s disclosures to her school social worker, her guardian, a forensic interviewer, and to CPS. The trial court asked Schinzing's counsel if he had any objection. Defense counsel responded that the trial court first needed to determine whether the disclosures were timely made and if so, then make sure the testimony was limited in scope consistent with the fact of complaint doctrine.[1]

The parties did not develop the record with respect to the timing of the disclosures in relation to when the alleged abuse occurred, and the trial court did not address this timing in its ruling. Yet, the trial court granted the State's motion in limine, noting that Schinzing could object during testimony if the testimony about the disclosures overstepped the bounds of the fact of complaint doctrine.

At trial, R.L.S. testified in detail about the abuse. She explained that one day when she was in first grade, she was sleeping on a couch with Schinzing when she felt him put his hands down her pants and on her bottom, causing her to wake up. Schinzing then moved his hand to the front of her pants and touched her vagina. The abuse eventually stopped, although she was unsure whether it stopped when her aunt walked into the room or when Schinzing fell off the couch.

A few years later, when R.L.S. was in fifth grade, she disclosed the abuse to multiple adults. Several of these adults testified at the trial, including the school social worker, R.L.S.'s guardian, the forensic interviewer, a CPS employee, and a pediatric nurse practitioner. For example, the

---

[1] Discussed in more detail below, the fact of complaint doctrine, in general terms, permits the admission of limited evidence about disclosures of sexual misconduct despite evidentiary rules that might otherwise exclude the evidence. *State v. Martinez*, 196 Wn.2d 605, 611, 476 P.3d 189 (2020).

pediatric nurse practitioner testified that R.L.S. said that Schinzing touched her inappropriately on her bottom and "the part of her body that she pees from" while she was sleeping. Verbatim Rep. of Proc. (VRP) at 333. Schinzing did not object to any of this testimony about the disclosures.

Schinzing also testified and denied the allegations.

Following the testimony, the State proposed a jury instruction related to the corroboration of an alleged victim's testimony. The State's proposed instruction stated, "In order to convict a person of the crime of Child Molestation in the First Degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." Clerk's Papers (CP) at 39. Defense counsel responded that his preference was to not use the instruction, arguing that the parties could fairly argue the importance of corroboration to the jury without it. The trial court agreed to give the instruction.

At the close of the trial, the jury found Schinzing guilty of the charged crime of first degree child molestation—domestic violence.

At sentencing, the parties disputed Schinzing's offender score. The State argued that Schinzing's 2020 federal conviction for arson under 18 U.S.C. § 844(f)(1) should be included in his offender score because it was comparable to second degree arson in Washington. The trial court agreed and counted the conviction as two points for the offender score. Based on a total offender score of 5, the trial court imposed an indeterminate sentence with a minimum term of 90 months and a maximum term of life.

Schinzing appeals.

ANALYSIS

Schinzing makes three arguments. Schinzing argues that (1) the trial court erred in issuing a jury instruction related to the corroboration of the alleged victim's testimony because it amounted to a comment on the evidence, (2) the trial court erred in admitting R.L.S.'s delayed disclosures of sexual abuse under the fact of complaint doctrine, and (3) the trial court erred in including his federal arson conviction in his offender score because it was not comparable to a Washington offense.

I. NO CORROBORATION JURY INSTRUCTION

Schinzing first argues that the trial court commented on the evidence by instructing the jury that no corroboration was necessary to convict him of first degree child molestation. We disagree.

The Washington constitution prohibits judges from commenting on the evidence. WASH. CONST. art. IV, § 16. The purpose of prohibiting judicial comments on the evidence "is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted." *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999).

Jury instructions can be the source of an improper comment. "A trial court makes an improper comment on the evidence if it gives a jury instruction that conveys to the jury his or her personal attitude on the merits of the case." *State v. Rohleder*, 31 Wn. App. 2d 492, 496, 550 P.3d 1042, *review denied*, ___ P.3d ___ (2024). Jury instructions that correctly state the law are not comments on the evidence. *See id.* at 497. We review de novo whether a jury instruction amounts to a judicial comment on the evidence in the context of the instructions as a whole. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

Washington law specifically provides that corroboration is unnecessary to convict a person of a sex offense. RCW 9A.44.020(1).[2] A jury instruction setting forth this principle, known as the "no corroboration jury instruction" has been in use for decades. *Rohleder*, 31 Wn. App. 2d at 502; *see State v. Clayton*, 32 Wn.2d 571, 573-74, 202 P.2d 922 (1949). In *Clayton*, the defendant argued that the no corroboration instruction was an improper comment on the evidence.[3] 32 Wn.2d at 573. Our Supreme Court disagreed, holding that because the instruction "expressed no opinion as to the truth or falsity of the testimony of the [victim], or as to the weight which the court attached to her testimony, but submitted all questions involving the credibility and weight of the evidence to the jury for its decision[,]" the instruction was not an improper comment on the evidence. *Id.* at 573-74.

In *Rohleder*, this court recently addressed and rejected the argument that a no corroboration jury instruction amounts to a comment on the evidence. 31 Wn. App. 2d at 494. There, in a case involving multiple sexual abuse crimes, the defendant argued, like Schinzing here, that the trial

---

[2] RCW 9A.44.020(1) states, in relevant part, that "[i]n order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated." (Former RCW 9A.44.020(1) (2013) was in effect at the time that Schinzing committed the offense, but we cite to the current version of the statute because the language of the relevant portion of the statute has not changed.)

[3] The no corroboration jury instruction at issue in *Clayton* was longer than, but similar in substance to, the instruction used in this case. There, the instruction provided:

You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the [victim] alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

32 Wn.2d at 572 (internal quotation marks omitted).

court erred in giving the no corroboration instruction because it was an impermissible comment on the evidence. *Id*. at 493-94. The defendant contended that *Clayton* should not be followed because of differences in the language of the instructions that were used. *Id.* at 495-96. This court held that the language differences were irrelevant and confirmed the applicability of *Clayton*, reasoning that despite being old, *Clayton* remained binding precedent and that "[u]ntil the Supreme Court addresses this issue, we are constrained by *Clayton* to conclude that giving a no corroboration instruction is not a comment on the evidence." *Id.* at 501.

We agree with *Rohleder*. *Clayton* remains binding precedent, and until our Supreme Court readdresses the issue, we must conclude that giving a no corroboration instruction is not a comment on the evidence.[4] 31 Wn. App. 2d at 501; *see 1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006) (the court of appeals is bound to follow precedent established by our Supreme Court). Thus, we hold that the trial court did not err in giving the no corroboration jury instruction.

## II.  FACT OF COMPLAINT DOCTRINE

Schinzing next argues that the trial court erred by using the fact of complaint doctrine to admit the testimony about R.L.S.'s disclosures of the sexual abuse approximately five years after the alleged abuse occurred. According to Schinzing, the fact of complaint doctrine requires that

---

[4] Schinzing argues, in part, that *Clayton* is no longer binding precedent because our Supreme Court "unequivocally signaled its intent to review the underpinnings of *Clayton*" by granting review in 2020 of a case involving the no corroboration instruction (and only failed to review the case because the defendant passed away). Br. of Appellant at 22. But Schinzing cites no authority holding that when our Supreme Court merely grants review of an issue, previous case law is no longer binding on us. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Moreover, our Supreme Court has recently denied review of *Rohleder*. 31 Wn. App. 2d 492.

the disclosures must be "timely" and an 11-year-old disclosing sexual assault when they were about 6 years old does not qualify as timely. Br. of Appellant at 23. The State responds that Schinzing has failed to adequately brief this issue on appeal because he provides no analysis on what constitutes an untimely complaint or how that may apply in the context of this case. We agree with the State.

The fact of complaint doctrine is a common law doctrine that permits the admission of evidence that the victim disclosed sexual violence to someone. *State v. Martinez*, 196 Wn.2d 605, 611, 476 P.3d 189 (2020). The purpose of the doctrine is to negate the inference that just because the victim failed to report immediately that they had been sexually assaulted, their claim could not be believed. *Id.* at 610. According to our Supreme Court, the doctrine is necessary because "mistaken beliefs about sexual violence are still pervasive in our society and in our jury boxes." *Id.* at 613. The doctrine serves to counteract the sexist expectations of some jurors, which can be important in cases where there is little physical evidence or the victim's credibility suffers due to other stereotypes or biases. *Id.* We review the trial court's decision to admit evidence, including under this doctrine, for an abuse of discretion. *Id.* at 614.

The evidence admissible under the fact of compliant doctrine is limited in scope. *Id.* at 611. Testimony under the doctrine is admissible to demonstrate that the victim reported the abuse to someone, but not to prove the truth of the matter asserted. *Id.* And the disclosure must be "timely made." *Id.* at 614 (quoting *State v. Ferguson*, 100 Wn.2d 131, 136, 667 P.2d 68 (1983)). "A complaint is timely if it is made when there is an 'opportunity to complain.' " *Id.* (internal quotation marks omitted) (quoting *State v. Griffin*, 43 Wn.2d 591, 597, 86 P. 951 (1906)).

Here, Schinzing generally argues that the trial court erred because R.L.S.'s disclosures to the adults were not timely made as required by the doctrine. But his argument is limited to a conclusory assertion that a five-year delay in the disclosure is untimely, and he provides no meaningful analysis as to why such a delay is untimely in the context of this case. Schinzing undertakes no explanation of why the disclosures to the various adults were not the first "opportunity to complain" under the circumstances. And critically, none of these issues were developed with the trial court, when a factual record could have been made about the timeliness of these disclosures given the surrounding circumstances. As our Supreme Court has recognized, the trial court is in the best position to determine what constitutes a timely complaint based on the surrounding circumstances. *See Martinez*, 196 Wn.2d at 614-15 ("We leave it in the able hands of the trial court to determine what constitutes a timely complaint based on the surrounding circumstances.").

Without meaningful analysis from Schinzing (especially considering the absence of a relevant factual record), we reject Schinzing's fact of complaint doctrine argument.

III. COMPARABILITY OF FEDERAL ARSON TO A WASHINGTON OFFENSE

Finally, Schinzing argues that the trial court erred by sentencing him with an incorrect offender score. He contends that the trial court wrongfully included a federal arson conviction in his offender score when the conviction was not comparable to a Washington offense. We disagree.

A. LEGAL PRINCIPLES

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the trial court uses the defendant's prior convictions to determine an offender score, which (along with the seriousness level of the current offense) establishes the defendant's presumptive standard sentencing range.

8

*State v. Arndt*, 179 Wn. App. 373, 377, 320 P.3d 104 (2014). "We review the trial court's calculation of a defendant's offender score de novo." *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

When the defendant has out-of-state convictions, the trial court must make a determination of whether the out-of-state offense is comparable to a Washington offense. *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). When evaluating comparability, we apply a two-part test. *Olsen*, 180 Wn.2d at 472. First, we determine if the offenses are legally comparable by comparing their elements. *Id.* Legal comparability exists when the out-of-state offense is the same or narrower than the Washington offense. *Id.*at 472-73. If the crimes are legally comparable, our analysis ends and the out-of-state offense is included in the defendant's offender score. *Canha*, 189 Wn.2d at 367.

If the offenses are not legally comparable, such as when the out-of-state offense is broader than the Washington offense, we determine whether the offenses are factually comparable by deciding if "the defendant's conduct would have violated a Washington statute." *Id.* The State has the burden to prove the comparability of an out-of-state conviction. *Olsen*, 180 Wn.2d at 472. If an out-of-state conviction involves an offense that is neither legally nor factually comparable to a Washington offense, the conviction may not be included in the defendant's offender score. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

B.  LEGAL COMPARABILITY

Schinzing argues that his federal arson conviction is not legally comparable to a Washington offense (the closest Washington offense is second degree arson). Schinzing makes two arguments. First, in a single sentence, he contends that the federal arson statute requires a

person to act "maliciously," while Washington's second degree arson requires more—specifically that a person act both "knowingly and maliciously." Second, in another brief reference, he appears to argue that Washington's definition of malice requires intent to be directed at another person, while the federal definition of malice is not limited to another person. Schinzing contends these additional requirements in Washington makes the state arson statute narrower and the federal statute broader and, thus, not comparable. Schinzing is correct that there are differences in language between the two statutes, but we disagree that the differences mean the statutes are not legally comparable.

Focusing on Schinzing's first argument, Washington's second degree arson statute only would be narrower than the federal statute if the state's use of "knowingly and maliciously" was effectively more selective than the federal use of the singular word "maliciously." *Compare* RCW 9A.48.030 *with* 18 U.S.C. § 844(f)(1). In other words, if a person's conduct met the standard of "maliciously" under the federal law, but not the standard of "knowingly and maliciously" under state law, then the federal statute would be broader. *Id.* The State argues that the federal statute is not broader because the federal definition of "maliciously" narrows the conduct it criminalizes to encompass fewer actions than that of the state statute. We agree the federal definition of maliciously makes these two statutes legally comparable.

This conclusion requires comparing the federal concept of maliciousness with what is required under state law to be knowing and malicious. The federal arson statute does not define the term "maliciously" so federal courts have presumed that Congress intended to adopt the term's common law meaning. *Togonon v. Garland*, 23 F.4th 876, 878 (9th Cir. 2022); *see* 18 U.S.C. § 844(f)(1). At common law, a defendant acted maliciously by

> *intentionally* burning the dwelling house of another or by doing so *wantonly*, meaning intentionally doing an act (e.g., starting a fire or burning his own premises) under circumstances in which the act created a very high risk of burning the dwelling house of another, where the actor **knew** of that risk but nonetheless engaged in the risk-taking act.

*Togonon*, 23 F.4th at 878 (boldface added) (internal quotation marks omitted). Thus, a defendant acts "maliciously" in the context of the federal arson statute if they either intentionally damage property covered by the statute or intentionally do an act *knowing* there is a very high risk that damage or injury would result. *See id.*

As previously discussed, the mens rea component to the state statute contains two components, "knowingly and maliciously." RCW 9A.48.030. Under Washington law, the concept of "knowingly" is defined broadly as when a person is "aware of a fact, facts, or circumstances or result described by a statute defining an offense" or they have "information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(i), (ii). The definition of maliciously is also expansive; it includes an evil intent to injure another person and may be inferred from an act done in willful disregard of the rights of another. RCW 9A.04.110(12).

From looking at these definitions, the addition of the word "knowingly" under the state statute does not make the state statute narrower—it adds nothing that is not subsumed with the federal concept of maliciousness. The federal definition of maliciousness includes either (1) specific intent to damage property or (2) an intentional act where the person knows of the risk of damage to property. *Togonon*, 23 F.4th at 878. If a person acts intentionally, they necessarily act

knowingly. *State v. Thomas*, 98 Wn. App. 422, 425, 989 P.2d 612 (1999) ("By acting intentionally, a person by law also acts knowingly."), *review denied*, 140 Wn.2d 1020 (2000). Thus, under either aspect of the federal definition of maliciousness, the concept of an intentional act is at least concurrent with the state concept of knowledge in this context. Indeed, Schinzing offers no analysis of how someone could possibly act maliciously under this federal definition and not also have that act be committed knowingly and maliciously under the state arson statute. Accordingly, we are unpersuaded by Schinzing's argument that the addition of the word "knowingly" in the state statute makes the state and the federal statutes legally incomparable.

Having rejected Schinzing's first argument for why the statutes are not legally comparable, we briefly consider Schinzing's second argument. With little explanation, Schinzing appears to argue that the federal arson statute is broader because Washington's definition of malice requires evil intent to be directed *at another person*, while the federal definition of malice is not limited to conduct directed at another person, but also can include an intent to damage property.[5] The State responds, in part, that Schinzing's interpretation of the state definition of malice would lead to an absurd result in the context of an arson statute.

---

[5] Compare RCW 9A.04.110(12) ("maliciously" includes "an evil intent . . . *to . . . injure another person*" and may also be inferred from an act done in willful disregard of the rights of another) (emphasis added)) with the federal definition from *Togonon*, 23 F.4th at 878 (explaining that a defendant acts maliciously if they either *intentionally damage property* covered by the statute or intentionally do an act with willful disregard of the likelihood that damage or injury would result).

The state definition of "maliciously" is not just limited to an evil intent to injure "another person," it also includes an act that is done "in willful disregard of the rights of another . . . or an act or omission of duty betraying a willful disregard of social duty." RCW 9A.04.110(12). Damaging property of another through arson would clearly be action taken "in willful disregard of the rights of the another" or a "willful disregard of social duty." *Id.* Accordingly, this difference in definitions of malice in the federal and state statutes does not make the statutes legally incomparable.[6]

Having rejected Schinzing's arguments that the federal statute is broader, we conclude that the two offenses are legally comparable.[7] With this conclusion, we may end our inquiry and need not consider factual comparability. *Canha*, 189 Wn.2d at 367. Thus, we hold that the trial court did not err in including Schinzing's federal arson conviction in his offender score.

### CONCLUSION

We affirm.

---

[6] With respect to the term "maliciously" as used in both the federal and state statutes, Schinzing limits his argument to the state statute's reference to an evil intent to injure "another person," and he does not argue more broadly that any other differences in those definitions might create a lack of comparability. We are limited by the arguments made by the parties and, accordingly, do not address any other potential differences in the definitions. *See Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (explaining that Washington courts generally follow the rule of party presentation).

[7] Not only is the federal statute not broader than the state statute, but the opposite may be true—the federal statute actually might be narrower. The federal statute applies to damage or destruction of *federal* property, while the state statute applies more broadly to damage of *any property*. *Compare* 18 U.S.C. § 844(f)(1) *with* RCW 9A.48.030.

No. 58436-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

CHE, J.

14