[No. 32084-0-I. Division One. March 6, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES E. SHILLING, *Appellant*.

*Neal Philip* of *Washington Appellate Defender Association,* for appellant.

*Jim Krider, Prosecuting Attorney,* and *Edward Stemler, Deputy,* for respondent.

WEBSTER, J. — James Shilling appeals two assault convictions. Shilling argues (1) he did not receive a speedy trial, (2) the glass with which he assaulted the victim was not a deadly weapon, (3) his offender score should not have included an attempted murder conviction, (4) his sentence should run concurrently with the attempted murder sentence, and (5) he was denied effective assistance of counsel. We affirm.

## FACTS

On August 1, 1991, James Shilling went to a Black Angus bar in Snohomish County. Shilling drank beer and hard liquor over the next 2 to 3 hours. Mark Honey, a Black Angus bouncer, observed Shilling staggering, Shilling having consumed several drinks in short order. Honey told Shilling that the Black Angus would not serve him any more alcohol. Shilling went to the other end of the bar to order a drink, but was turned away. Shilling asked Marcy Smith to buy a drink for him, but Smith declined.

Shilling returned to a table, and Honey then saw him drink from a glass containing alcohol. Honey went to the table and asked him to stop drinking. Shilling drank from the glass in front of Honey. Honey took the glass from Shilling and set it down on the table. Honey turned around to escort him from the bar; Shilling grabbed a glass, and either threw the glass at Honey's head or hit him on the forehead or top of his head. Shilling testified that Honey put him in a headlock, was cutting off his supply of air, and that he hit Honey in self-defense. Honey denied striking or holding him prior to the assault. Shilling was convicted of second degree assault for hitting Honey and third degree assault because the glass broke into many pieces, one of which cut a Black Angus patron.

## DISCUSSION

### Speedy Trial

Shilling claims he was denied a speedy trial because (1) the State lost the June 4, 1992, continuance form and Shill-

ing subsequently unknowingly agreed to a continuance, and (2) he was not brought to trial by December 11, 1992. Shilling's contention about the lost continuance form is without merit. The continuance was found by the defense attorney in his papers. Furthermore, Shilling moved for the June 4, 1992, continuance and reaffirmed the voluntary and knowing nature of the continuance on June 18, 1992.

Shilling's trial was to start on December 7, 1992, but his attorney, Chad Dold, had pneumonia. The court continued the trial 4 days, until December 11, 1992. When Shilling's trial began on December 14, 1992, Dold and the court addressed the speedy trial issue:

> THE COURT: It's my understanding on Friday, when you showed up on the 11th, there had been a medical emergency over in the jail.
>
> MR. DOLD: Correct.
>
> THE COURT: So they couldn't get him over here.
>
> MR. DOLD: Exactly.

■ CrR 3.3(d)(8) allows a court to extend the time for trial due to unavoidable or unforeseen circumstances beyond the control of the court or the parties unless the defendant would be substantially prejudiced. The extension can be granted after the speedy trial period has expired. *State v. Raper*, 47 Wn. App. 530, 535, 736 P.2d 680, *review denied*, 108 Wn.2d 1023 (1987). "A trial court's grant of a continuance under CrR 3.3(d)(8) is reviewable only for a manifest abuse of its discretion." *State v. Andrews*, 66 Wn. App. 804, 810, 832 P.2d 1373 (1992), *review denied*, 120 Wn.2d 1022 (1993). If the jail's medical emergency was unforeseen and unavoidable, and prevented transporting Shilling to trial, the court's extension was not an abuse of discretion. "Unforeseen and unavoidable circumstances include those that are specific, unpredictable, and not self-created." *Bellevue v. Vigil*, 66 Wn. App. 891, 893, 833 P.2d 445 (1992). A medical emergency is unforeseen and unpredictable. *Andrews*, at 812-13 (1-day retroactive continuance for judge's dental emergency "is an example of an unavoidable or unforeseen circumstance that falls squarely within the purview of CrR

3.3(d)(8)"). The trial court did not abuse its discretion in granting a retroactive 1-day extension.

### Bar Glass as a Deadly Weapon

■■ Shilling challenges the sufficiency of evidence to convict him of second degree assault, arguing the bar glass was not a deadly weapon.

> Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.

(Citation omitted.) *State v. Cook*, 69 Wn. App. 412, 415, 848 P.2d 1325 (1993).

■■ "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . (c) Assaults another with a deadly weapon". RCW 9A.36.021(1). An item is a deadly weapon if, under the circumstances in which it is used, it is readily capable of causing death or substantial bodily harm. RCW 9A.04.110(6). Weapons can be per se deadly (*i.e.*, explosives and firearms), or deadly because capable of causing death or substantial bodily harm under the circumstances. *State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30, *review denied*, 119 Wn.2d 1022 (1992). This glass is not a per se deadly weapon; thus, the inherent capacity and "the circumstances in which it is used" determine whether the weapon is deadly. RCW 9A.04.110(6). "Circumstances" include "the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted." *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972) (construing RCW 9.95.040) (quoting *People v. Fisher*, 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965)). Ready capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm. RCW 9A.04.110(6); *State v. Cobb*, 22 Wn. App. 221, 223, 589 P.2d 297 (1978), *review denied*, 92 Wn.2d 1011 (1979); *State*

*v. Carlson*, 65 Wn. App. 153, 159, 828 P.2d 30, *review denied*, 119 Wn.2d 1022 (1992).[1] " 'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part". RCW 9A.04.110(4)(b).

Shilling admits the glass he used "could possibly cause substantial bodily harm or death". He testified at trial that he thought the glass was "pretty strong". Thus, the glass had the inherent capacity to cause bodily injury, and the focus of our inquiry is whether the glass, in the manner it was used, was capable of causing substantial bodily injury. Viewing the facts most favorably to the prosecution, Honey was trying to escort Shilling out of the bar with his back turned when Shilling hit him in the head with the glass. The blow knocked Honey's glasses off, the glass broke upon impact, and glass shards flew about 15 feet. Honey's face suffered lacerations, subsequently treated with five stitches. A piece of embedded glass came out of Honey's head a month after the incident. Expert testimony established that a blow to the head using the glass could fracture the nose and/or cause lacerations requiring stitches and producing permanent scarring. The evidence is sufficient to support the determination that the bar glass had the ready capability under the circumstances to cause substantial bodily harm, and was a deadly weapon.

### Concurrent Versus Consecutive Sentences

The trial court sentenced Shilling to concurrent terms for second and third degree assault (taking an attempted murder conviction into account when determining Shilling's

---

[1]*See also Sorenson*, 6 Wn. App. at 274 (penknife with 1 1/2-inch blade a deadly weapon under RCW 9.95.040 when held by perpetrator who grabbed victim by the throat and knocked victim to the floor); *State v. Pomeroy*, 18 Wn. App. 837, 844, 573 P.2d 805 (1977) (beer bottle was a deadly weapon under RCW 9.95.040 when broken against a table by perpetrator, thrust into victim's face, and injury required removing victim's eye); *State v. Thompson*, 88 Wn.2d 546, 550, 564 P.2d 323 (1977) (plurality decision) (open pocketknife with 2- to 3-inch blade held against neck of the victim, where victim sustained cut on neck and bruises on right arm, was a deadly weapon (RCW 9.95.040)).

offender score), and ordered the assault sentences to run consecutively to a previously imposed attempted murder sentence. Shilling appeals his sentence, arguing (1) the trial court should not have utilized his attempted murder conviction in computing his offender score because the assault convictions were utilized to compute the attempted murder offender score, and (2) the court improperly disregarded the Sentencing Reform Act of 1981's (SRA) presumption of concurrent sentencing.

■ The inclusion of Shilling's attempted murder conviction in his offender score, even though the attempted murder occurred after the assaults, resulted from the timing of Shilling's trials.[2] The incidents, trials, and sentencing hearings occurred as follows:

| | |
|---|---|
| Assault incident | August 1, 1991 |
| Attempted murder incident | January 2, 1992 |
| Attempted murder trial | October 22, 1992 |
| Assault trial | December 15, 1992 |
| Attempted murder sentencing | January 4, 1993 |
| Assault sentencing | January 8, 1993 |

The court properly proceeded under RCW 9.94A.400(1)(a) at the assault sentencing because Shilling was being sentenced for two current offenses, assault second degree and assault third degree. The sentence range is determined by "using all other current and prior convictions as if they were prior convictions for the purpose of the offender score". RCW 9.94A.400(1)(a). The issue is whether the attempted murder was a "prior conviction" at the assault sentencing. A "prior conviction" is a conviction which existed before the date of sentencing. RCW 9.94A.360(1). A conviction is "an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." RCW 9.94A.030(9). Because Shilling was found guilty of attempted murder before January 8, 1993, the attempted

---

[2]For clarity, the two assaults will hereinafter be referred to in the singular, and the January 8, 1993, sentencing will be referred to as the assault sentencing.

murder was a "prior conviction" and properly included in Shilling's offender score at the assault sentencing.

Including Shilling's attempted murder conviction at the assault sentencing accords with *State v. Collicott*, 118 Wn.2d 649, 827 P.2d 263 (1992). Collicott pleaded guilty in 1985 to burglary, rape, and kidnapping. *Collicott*, at 664. After sentencing for the 1985 crimes, but prior to the appeal being decided, Collicott in 1986 again pleaded guilty to another burglary charge (hereinafter "the 1986 burglary"); the incident underlying the 1986 burglary plea took place prior to the incident underlying the 1985 burglary, rape, kidnapping plea. *Collicott*, at 653. In 1992, the Supreme Court included the 1986 burglary conviction when it held that Collicott's offender scores at resentencing for the 1985 crimes should be 9 for burglary, 7 for rape, and 7 for kidnapping.[3] The court in Collicott included the 1986 burglary conviction in his offender score even though (1) the incident underlying the 1986 burglary conviction occurred prior to the incident underlying the offense being sentenced, and (2) the 1986 burglary conviction occurred *after* conviction for the offense being sentenced.[4] *Collicott*, at 653 n.9. The statute's plain language has the same effect in this case, although the inci-

---

[3]The offender score of 9 for burglary, computed pursuant to RCW 9.94A.360(11) (1992), presumably included 2 points for the 1985 rape charge, 2 points for the 1985 kidnapping charge, 2 points for the 1978 burglary, 1 point for the 1983 escape, and 2 points for the 1986 burglary. The 7-point offender score for rape, computed under RCW 9.94A.360(10), presumably included 3-points for the 1985 kidnapping, 1 point for the 1985 burglary, 1 point for the 1978 burglary, 1 point for the 1983 escape, and 1 point for the 1986 burglary. *Collicott*, 118 Wn.2d at 665-67. The kidnapping and rape scores are similarly computed.

[4]The *Collicott* court distinguished *State v. Whitaker*, 112 Wn.2d 341, 346, 771 P.2d 332 (1989), in which the court was concerned that "each offense would be treated as a prior conviction to the other". *Collicott*, 118 Wn.2d at 665 (quoting *Whitaker*, at 346). Because "prior conviction" is defined to include guilty verdicts and pleas, the Legislature did not intend to require a judgment and sentence before counting an offense as a "prior conviction". Therefore, the sentencing statute, perhaps anticipating a defendant who has committed a string of crimes, contemplates that some offenses will count reciprocally as "prior convictions". If unfairness results, the Legislature can prohibit reciprocal counting of prior convictions. A sentencing court could also exercise discretion within the presumptive range if it perceives unfairness.

dent underlying the attempted murder occurred after the incident underlying the offense being sentenced, and the conviction for the later incident occurred before conviction for the offense being sentenced. The offender score includes *all* prior convictions (as defined by RCW 9.94A.030(9)) existing at the time of that particular sentencing, without regard to when the underlying incidents occurred, the chronological relationship among the convictions, or the sentencing or resentencing chronology. The trial court in this case properly included Shilling's attempted murder conviction as a "prior conviction" when determining his offender score.

While RCW 9.94A.400(1)(a) applies to the offender scores and sentencing of the two assaults, it does not address the relationship between the assault sentence and the prior attempted murder sentence. RCW 9.94A.400(3) applies when (1) a person who is "not under sentence of a felony" (2) commits a felony and (3) before sentencing (4) is sentenced for a different felony. The statute provides:

> Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under sentence of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

RCW 9.94A.400(3). When Shilling committed the August 1, 1991, assault, he was not "under sentence of felony". *In re Caley*, 56 Wn. App. 853, 858, 785 P.2d 1151 (1990). Therefore, RCW 9.94A.400(3) is applicable to the assault sentencing. The trial court had total discretion under RCW 9.94A.400(3) to make Shilling's assault sentence consecutive to the attempted murder sentence. *In re Long*, 117 Wn.2d 292, 302, 815 P.2d 257 (1991).[5] Each successive sentencing court

---

[5]We recognize that "total discretion" creates an awesome power and responsibility in the trial court. We note that the trial judge in this case may have been aggravated by the Defendant's remarks at sentencing. The defendant's action or reaction at sentencing should not ordinarily determine whether consecutive sentences are ordered.

controls the relationship of its sentence to sentences previously imposed. *Long*, at 303. Only an express order of consecutive sentences is required to overcome the SRA's presumption of concurrent sentences. RCW 9.94A.400(3); *State v. Linderman*, 54 Wn. App. 137, 139, 772 P.2d 1025, *review denied*, 113 Wn.2d 1004 (1989). Shilling's consecutive sentences result from Shilling's two separate criminal acts, not the timing of the two actions. The trial court's express order of consecutive sentences comports with RCW 9.94A.400(3) and will not be disturbed.

### Ineffective Assistance of Counsel

■■ "The test for ineffective assistance of counsel is whether (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) this deficiency prejudiced the defendant." *State v. Early*, 70 Wn. App. 452, 460, 853 P.2d 964 (1993), *review denied*, 123 Wn.2d 1004 (1994).

> [T]here is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The defendant has the heavy burden of showing, after a review of the entire record, that counsel's performance fell below the objective standard of reasonableness after considering all surrounding circumstances.

(Citations omitted.) *State v. Sherwood*, 71 Wn. App. 481, 483, 860 P.2d 407 (1993), *review denied*, 123 Wn.2d 1022 (1994).

The record establishes that the defense attorney exceeded the objective standard of reasonableness:

> Dold successfully argued for exclusion of testimony relating to Shilling's attempted murder conviction and timely objected (including asking to have the jury removed) when the prosecution tried to elicit testimony arguably violating the court's ruling.
>
> Cross examination established that the witnesses did not actually see whether Honey put Shilling in a headlock prior to the assault, and witnesses were impeached with prior inconsistent statements.

The defense motion to dismiss demonstrated a sound understanding of assault law.

The court was persuaded to give a lesser included jury instruction for the second degree assault count.

 The closing argument vigorously argued the law and witness credibility.

Shilling asserts ineffective assistance because Dold called no witnesses to substantiate Shilling's self-defense testimony.[6] There is evidence that an investigation was conducted: Honey was interviewed by the public defender's office, and Dold told the court that the decision not to call any witnesses, except Shilling, was based on an investigation. One could postulate that the women who met Shilling at the Black Angus or one of the 150 other patrons might have been favorable witnesses. But this would be conjecture because there is no evidence showing what beneficial information the witnesses *would* have provided. *Sherwood*, 71 Wn. App. at 484. Dold did get an investigating police officer to admit that Shilling had a cut on his mouth, and swollen eyes with bumps underneath — conditions consistent with the victim of an assault. Shilling testified on both direct and cross examination that he acted in self-defense, and Dold's closing argument urged the jury to find that Shilling had acted in self-defense.

An attorney's decision about what witnesses to subpoena or ignore is tactical; it generally does not support a claim of ineffective counsel. *Sherwood*, 71 Wn. App. at 484. Based on the entire record, defense counsel's performance was above an objective standard of reasonableness.

The judgment and sentence of the trial court is affirmed.

KENNEDY and BECKER, JJ., concur.

Review denied at 127 Wn.2d 1006 (1995).

---

[6]Shilling also alleges conflict of interest, but offers nothing to support the contention.