**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52320-5-II |
| Respondent, | |
| v. | |
| ERIC NICHOLAS MAYER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Eric N. Mayer guilty of first degree robbery, conspiracy to commit first degree robbery, and second degree assault. The jury also found that Mayer committed these crimes while armed with a deadly weapon. At sentencing, the trial court imposed legal financial obligations (LFOs), namely a criminal filing fee and a court appointed attorney fee. The trial court also imposed an interest accrual provision. Mayer appeals his conspiracy conviction and sentence, arguing that there was insufficient evidence to support that conviction or any of the deadly weapon enhancements. He also argues that the trial court improperly imposed an interest accrual provision, a criminal filing fee, and a court appointed attorney fee.

We hold that there was sufficient evidence to support the conspiracy to commit first degree robbery conviction and to impose all deadly weapon sentence enhancements. We also hold that the interest accrual provision was improper. Further, we hold that because Mayer was found indigent, the trial court erred in either imposing the LFOs, or imposing the LFOs without a proper inquiry into his ability to pay. Accordingly, we affirm Mayer's conviction and sentence enhancements, but remand to amend the interest accrual provision, to determine the category of

Mayer's indigency, and to reconsider the imposition of the criminal filing fee and the court appointed attorney fee.

FACTS

Mayer, Kindra McMillan, and Christian Blair took a drive in Blair's truck. Because she was "couch surfing," McMillan had all her belongings with her. 2 Verbatim Report of Proceedings (VRP) at 30. McMillan fell asleep during the drive. It was dark when she awoke, and the truck was parked in a remote location. After Mayer, McMillan, and Blair exited the truck, Mayer's two friends arrived, Robert Lewis and Alexis Kilger. Mayer and his friends beat McMillan with a flashlight, and took the shoes and sweater she was wearing. After the beating, someone told McMillan, "This is what you get for stealing from my family." 2 VRP at 26. Mayer and his friends then drove away, taking all of McMillan's belongings with them.

The State charged Mayer with first degree robbery, conspiracy to commit first degree robbery, and two counts of second degree assault. The case proceeded to a jury trial.

At trial, McMillan testified that, as it was starting to get dark, she, Mayer, and Blair decided to take a drive. At the time, McMillan did not have a place to live, so she placed approximately four bags filled with her personal items in the back of Blair's truck. McMillan fell asleep. When Mayer and Blair woke her up to get out of the truck, they were in a remote park, it was dark, and her cell phone was missing. After Mayer's other two friends showed up, Mayer began shining the flashlight into the woods.

McMillan also testified that she was hit on the back of her head. She fell, and while she was on the ground she reached out her hand for Mayer's help. Instead of helping, Mayer took a large, metal flashlight, and struck McMillan across her forehead. McMillan fell backward. She stood up, and then Kilger "tased" her. 2 VRP at 24. While McMillan was lying on the ground,

2

one of Mayer's friends took off the sweater and shoes McMillan was wearing. Someone told McMillan, "This is what you get for stealing from my family." 2 VRP at 26. Then Mayer and Blair drove away with McMillan's cell phone, her purse with $100 in it, and four bags filled with McMillan's personal items.

Mayer and his friends left McMillan losing consciousness and bleeding on the ground. McMillan struggled to stand up. She was barefoot, bleeding, and had no way of calling 911. McMillan eventually wandered to a nearby house for medical assistance. McMillan sustained multiple injuries, including two scalp lacerations requiring sutures and staples.

Dr. Jason Stone, the emergency room physician who treated McMillan, testified about the extent of McMillan's injuries. He testified that McMillan had two lacerations on her head, her scalp was swollen, and she was experiencing back and neck pain. The first laceration was on the right side of her forehead and the second laceration was on the back of her scalp. Each laceration was about an inch long, and because of their length, Dr. Stone had to suture and staple the lacerations closed. Because of the severity and placement of her injuries Dr. Stone ordered a CT (computed tomography) scan of McMillan's brain, X-rays of her neck and back, and a neurological exam. Dr. Stone diagnosed McMillan with a mild concussion.

The trial court dismissed one count of second degree assault after the State rested. The jury found Mayer guilty of the remaining charges of first degree robbery, conspiracy to commit first degree robbery, and one count of second degree assault. The jury also found that Mayer was armed with a deadly weapon for all convictions.

At sentencing, the trial court asked Mayer whether he owned any real estate or vehicles and whether he had any cash on hand. Mayer responded that he owned two cars, a boat, and that he had some cash. After the inquiry, the trial court concluded that Mayer had the ability to pay

some costs. On Mayer's judgement and sentence, the trial court checked a box stating that the imposition of nonmandatory LFOs was inappropriate. However, under the checked box, the trial court wrote, "Defendant has a reduced ability to pay." Clerk's Papers (CP) at 157. As a result, the trial court imposed an interest accrual provision, a $200 criminal filing fee, and a $200 court appointed attorney fee. The trial court found Mayer indigent for the purposes of an appeal.

Mayer appeals his conspiracy to commit first degree robbery conviction, the deadly weapon sentence enhancements, and the imposition of LFOs.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Mayer argues that there was insufficient evidence to support his conspiracy to commit a first degree robbery conviction because the State failed to prove an agreement or plan to commit a robbery. Mayer also argues that there was insufficient evidence to support any of the deadly weapon sentence enhancements because the State failed to prove that the flashlight was a deadly weapon, and also failed to prove that he was armed with a flashlight during the alleged conspiracy. We disagree.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational jury could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, he admits the truth of the State's evidence, and all reasonable inferences drawn from that evidence are to be construed in favor of the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. In a sufficiency of the evidence determination, both circumstantial and direct evidence are equally

reliable. *Cardenas-Flores*, 189 Wn.2d at 266. We review the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

A.       *Conspiracy To Commit First Degree Robbery*

A person commits conspiracy to commit first degree robbery if he intends to commit the crime of first degree robbery with the assistance of one or more individuals, and one individual takes a substantial step toward the commission of the robbery. RCW 9A.28.040 (1); RCW 9A.56.200(1)(a). Multiple acts over a period of time can qualify as a conspiracy as long as the acts are committed with a single objective. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). A formal agreement is not needed to support the crime of conspiracy, but rather an agreement may be inferred from evidence of individuals working together to accomplish a common purpose. *State v. Barnes*, 85 Wn. App. 638, 664, 932 P.2d 669 (1997).

Here, the State presented sufficient evidence for a rational trier of fact to conclude that all of the elements of conspiracy to commit first degree robbery were proven beyond a reasonable doubt. On appeal, Mayer does not contest his conviction of first degree robbery. As a result, we need only consider whether (1) Mayer intended to commit the crime of first degree robbery with the assistance of other individuals and (2) one of the individuals took a substantial step toward robbing McMillan.

At trial, McMillan testified that she rode with Mayer and Blair to a remote location. Shortly after they arrived, Mayer's other two friends showed up and one of them hit McMillan on the head with a heavy object. As she struggled to stand up, Mayer struck McMillan in the forehead with a flashlight. When she stood up again one of Mayer's friends "tased" her. 2 VRP at 24. Then, Mayer and his friends removed her sweater and shoes, and drove away with her cell phone, her purse with $100 in it, and four bags filled with the rest of her belongings. Someone

told McMillan, "This is what you get for stealing from my family." 2 VRP 26. From this evidence, a rational jury could infer that Mayer committed the crime of conspiracy to commit first degree robbery.

Mayer argues that the evidence is sufficient to support only a conspiracy to commit second degree assault, not robbery. He argues that the State failed to prove that he and his friends intended to rob McMillan. "Although the crime of conspiracy does require proof of agreement, that proof may come in the form of circumstantial evidence." *State v. Frahm*, 3 Wn. App. 2d 812, 824, 418 P.3d 215 (2018) (citing *Barnes*, 85 Wn. App. at 664), *aff'd* 193 Wn.2d 590 (2018). "'A formal agreement is not necessary.'" *Frahm*, 3 Wn. App. 2d at 824 (quoting *State v. Israel*, 113 Wn. App. 243, 284, 54 P.3d 1218 (2002)). Viewing the evidence in the light most favorable to the State, we hold that a rational jury could find beyond a reasonable doubt that Mayer and his friends planned to rob McMillan. Thus, there was sufficient evidence to support the jury's verdict of conspiracy to commit first degree robbery.

B.      *Deadly Weapon Enhancements*

A person who is armed with a deadly weapon at the time of the commission of their crimes can receive a sentence enhancement. RCW 9.94A.825; RCW 9.94A.533(3), (4). A "deadly weapon" is an "implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825. In determining whether an item is a deadly weapon, a trier of fact can consider (1) the area of the victim's body targeted, (2) the degree of force used by the defendant, (3) the defendant's stated intent, and (4) the injuries suffered by the victim. *State v. Shilling*, 77 Wn. App. 166, 171-72, 889 P.2d 948 (1995).

1.  *The Flashlight Was Used in a Manner that Could Have Resulted in Death*

Here, the State presented sufficient evidence for a rational jury to find beyond a reasonable doubt that the flashlight was used in a manner that had the capacity to inflict death and from the manner it was used could have easily and readily produced death. At trial, McMillan testified that Mayer and his friends struck her in the head repeatedly with a heavy metal flashlight. As a result, McMillan suffered a blow to the back of her head and to her forehead. She was also rendered unconscious for a period of time.

Dr. Stone testified that McMillan suffered two scalp lacerations which had to be sutured and stapled closed. Due to the severity and placement of her injuries, Dr. Stone ordered a CT scan of McMillan's brain, X-rays of her neck and back, and a neurological exam. Dr. Stone also diagnosed McMillan with a mild concussion.

Mayer and his friends targeted McMillan's head, they used enough force to render her partially unconscious after two blows, and as a result, McMillan suffered two lacerations to her head and a concussion. Therefore, a rational jury could conclude that the flashlight was used in a manner that was capable of producing death. Accordingly, there was sufficient evidence to support the jury's finding that Mayer was armed with a deadly weapon.

Mayer argues that the flashlight did not qualify as a deadly weapon because Mayer and his friends did not intend to kill McMillan. But the State is not required to prove intent to kill in order for the jury to find deadly weapon sentence enhancements. Instead, the key inquiry is whether the way in which the object was used could have resulted in death. *Shilling*, 77 Wn. App. at 171. Viewing the evidence in the light most favorable to the State, we hold that there is sufficient evidence for a rational jury to find beyond a reasonable doubt that the flashlight was used in a manner that could have easily and readily resulted in death.

2.     *Mayer Was in Possession of the Flashlight During the Commission of the Conspiracy*

To prove a deadly weapon sentence enhancement on a conspiracy charge, the State must establish a nexus between the defendant, the weapon, and the crime committed. *State v. Houston-Sconiers*, 188 Wn.2d 1, 17, 391 P.3d 409 (2017). Sufficient evidence of nexus exists "'[s]o long as the facts and circumstances support an inference of a connection between the weapon, the crime, and the defendant.'" *Houston-Sconiers*, 188 Wn.2d at 17 (alteration in original) (quoting *State v. Easterlin*, 159 Wn.2d 203, 210, 149 P.3d 366 (2006)).

Here, the State presented sufficient evidence for a rational trier of fact to conclude that Mayer was armed with the flashlight during the commission of the conspiracy.

As explained above, there was sufficient evidence to support Mayer's conviction for conspiracy. Thus, the State need only show that Mayer was armed with the flashlight during that conspiracy. Viewing the evidence here in the light most favorable to the State, there is sufficient evidence for a rational jury to determine beyond a reasonable doubt that Mayer was armed with the flashlight during the commission of the conspiracy. At trial, McMillan testified after they arrived to the remote location, Mayer was shining a flashlight into the woods. Soon after, McMillan was hit on the back of the head and fell to the ground. Mayer took the flashlight and struck McMillan across her forehead. Therefore, there was sufficient evidence to support the jury's finding that Mayer was in possession of the flashlight during the commission of the conspiracy.

## II.  LFOs

Mayer argues that the interest accrual provision must be stricken from the judgment and sentence in light of *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). Mayer also argues that the criminal filing fee and the court appointed attorney fee should be stricken from the judgment

and sentence because the amended LFO statutes do not authorize the imposition of nonmandatory LFOs on indigent defendants.

The State argues that even though the language used in the interest accrual provision is outdated, we should not remand to the trial court to strike the interest accrual provision because Mayer was not at risk of the interest accrual provision being enforced. The State further argues that the criminal filing fee and the court appointed attorney fee should not be stricken from the judgment and sentence because Mayer was not found indigent under RCW 10.101.010(3)(a) through (c).

We hold that the trial court improperly imposed interest accrual on nonrestitution LFOs. We further hold that the record is insufficient for us to determine the nature of Mayer's indigency.

A.      *Interest Accrual Provision*

Recent legislative amendments prohibit trial courts from imposing interest accrual provisions on nonrestitution LFOs. RCW 10.82.090(2)(a); *Ramirez*, 191 Wn.2d at 746-47. Here, the trial court imposed an interest accrual provision on all LFOs in Mayer's judgment and sentence. We hold that the trial court erred in imposing an interest accrual provision on nonrestitution LFOs.

B.      *Nonmandatory Costs*

Recent legislative amendments prohibit trial courts from imposing costs on a defendant who is found indigent under RCW 10.101.010(3)(a) through (c). RCW 10.01.160(3). However, if a defendant is found indigent under RCW 10.101.010(3)(d) the trial court may impose costs in accordance with *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Criminal filing fees and attorney fees are costs. RCW 10.01.160(2). The record must show that the trial court

made an individualized inquiry into the defendant's current and future ability to pay, the defendant's other debts, and the amount of time the defendant has spent incarcerated. *Blazina*, 182 Wn.2d at 838.

Here, Mayer's indigency is contested. The record does not state whether the trial court found Mayer indigent under RCW 10.101.010(3)(a) through (c) or whether the trial court found him indigent under RCW 10.101.010(3)(d).

Mayer argues that he was found indigent under RCW 10.101.010(3)(a) through (c). Mayer supports this claim by (1) citing the order stating that he was found indigent for purposes of appeal, and (2) citing his judgment and sentence in which the trial court checked a box which stated, "The following extraordinary circumstances exist that make payment of nonmandatory legal financial obligations inappropriate." CP at 157. However, neither the order stating that Mayer was found indigent for the purposes of appeal nor the checked box which stated that the imposition of nonmandatory LFOs were inappropriate reveal whether the trial court found Mayer indigent under RCW 10.101.010(3)(a) through (c).

The State contends that Mayer was found indigent under RCW 10.101.010(3)(d). In support of this argument, the State asks us to interpret the checked box as a mistake because the trial court inquired into Mayer's ability to pay LFOs.

At sentencing, the trial court asked Mayer about his ownership of property and the cash he had on hand. Further, on Mayer's judgment and sentence the trial court wrote, "Defendant has a reduced ability to pay." CP at 157. According to the State, the conversation at sentencing, supports the conclusion that the trial court meant the written statement on Mayer's judgment and sentence to override the checked box. However, neither the colloquy at sentencing nor the information listed on the judgment and sentence reveal whether the trial court found Mayer

10

indigent under RCW 10.101.010(3)(d). Further, even if the trial court found Mayer indigent under RCW 10.101.010(3)(d), the trial court's inquiry into the defendant's current and future ability to pay falls short of *Blazina*'s requirements.

Accordingly, we affirm Mayer's conviction, but remand to the trial court to determine the category of Mayer's indigency under RCW 10.101.010(3) and to reconsider the imposition of the criminal filing fee and the court appointed attorney fee in accordance with *Blazina*, if appropriate.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

, C.J.
Lee, C.J.

Sutton, J.