IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36816-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VICTOR JAMES MATHIS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Victor James Mathis challenges his first degree perjury conviction and sentence. The perjury conviction arises out of testimony Mathis gave during his 2018 trial in which he was charged with two counts of first degree unlawful possession of a firearm (UPFA). In that trial, Mathis testified he had never been convicted of any crimes in Georgia and that the Georgia crimes the State asserted he committed were actually committed by his identical twin half-brother, Victor Lewis James. We affirm his conviction but remand for resentencing.

1

FACTS

*Firearms arrest and charges*

In January 2018, police responded to a disorderly conduct call in Goldendale, Washington. Officers contacted Victor James Mathis, who permitted them to seize a .30-06 rifle from his home. Later that day, police learned of Mathis's criminal history and obtained a search warrant. The next day, during a search of Mathis's home, police found another weapon. After advising him of his *Miranda*[1] rights, Sergeant Jay Hunziker told Mathis that he was unable to lawfully possess firearms due to two Georgia felony convictions. Mathis initially denied the convictions, but later said he had been in custody for those crimes but was released when authorities learned his half-brother had used his name. Sergeant Hunziker advised Mathis that his criminal history contained his identifying information. Mathis then admitted to the sergeant that he was a felon and had been convicted of armed robbery and burglary in Georgia and that he knew he was not allowed to possess firearms. Mathis was arrested and charged with two counts of first degree UPFA.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 36816-5-III
*State v. Mathis*

*Firearms trial*

In August 2018, Mathis went to trial on his firearms charges. Mathis testified in his own defense. Under oath, he stated he had never gone by another name, had never been convicted of crimes in Georgia, and had never been to prison. Yet criminal records from Georgia showed that a Victor Lewis James had been convicted of armed robbery. Mathis explained that Victor Lewis James was his identical twin half-brother from another mother and that both he and James were born on the same day.

The jury found Mathis guilty of two counts of first degree UPFA. Two weeks later, the trial court sentenced Mathis to 102 months for each count, running them concurrently.[2]

*Perjury charge and trial*

After the firearms trial, the sheriff's office began investigating the identity of Victor Lewis James, Mathis's purported twin half-brother. Detectives searched Georgia Vital Records and they were unable to locate the birth of Victor Lewis James; they found

---

[2] Mathis appealed his firearms convictions to this court, arguing the State brought insufficient evidence to prove the essential element of a constitutionally valid predicate felony conviction. This court affirmed those convictions in an unpublished opinion. *State v. Mathis*, No. 36296-5-III (Wash. Ct. App. Aug. 20, 2019) (unpublished) http://www.courts.wa.gov/opinions/pdf/362965_unp.pdf, *review denied*, 194 Wn.2d 1019, 455 P.3d 124 (2020).

3

only Victor James Mathis.  Detectives obtained information on some of the prior Georgia convictions, including a Georgia Department of Corrections fingerprint card that listed Victor Lewis James as the person convicted.

Jody Dewey, the State's forensic analyst, compared the fingerprints on the Georgia fingerprint card with those taken during Mathis's booking and his judgment and sentencing.  The three sets of fingerprints all had the same pattern types and the same right thumb fingerprint.

The State charged Mathis with one count of perjury for material misstatements he made during his trial testimony.  The State alleged Mathis lied under oath when "denying he was a convicted felon or that he had previously gone under a different name."  Clerk's Papers (CP) at 124.

Mathis elected to have the perjury charge tried to the bench.  The State called Sergeant Hunziker, the arresting officer from the January 2018 firearms arrest.  Sergeant Hunziker explained that after he arrested Mathis and read him his rights, Mathis said he had been convicted but was released from custody because his half-brother had used his name.  But when the sergeant explained to Mathis the information in his criminal history included his birth date, FBI[3] number, fingerprint classifications, and known aliases,

---

[3] Federal Bureau of Investigation.

4

Mathis admitted he was a convicted felon and had been convicted of armed robbery and burglary in Georgia.

The State offered a fingerprint card certified by the Georgia Department of Corrections. Ex. 2.[4] The fingerprint card contained identifying information, a box stamped "ADDITIONAL SENTENCE," a box marked "CHARGE," and a box marked "FINAL DISPOSITION." The following information was typed in the "CHARGE" box: "POSS FIREARM CONVCT FELON (91385): POSS OF CERTAIN WEAPONS (91385): POSS OF FIREARM DUR CRIME (91385): AG AGRAVATED ASSAULT (91385): ARMED ROB*." Ex. 2. The following information was typed in the "FINAL DISPOSITION" box: "5Y CT 10 CC: 5Y CT 9 CC: 5Y CT 8 CC: 10Y 2 CTS CC: 20Y SV 15Y B/P CT 1." Ex. 2.

The parties disputed the admissibility of the fingerprint card. After some discussion, the court found it was properly authenticated, and the hearsay exception for judgment of a previous conviction applied:

> In reviewing the documents it does appear that these are pursuant to pleas based upon page—the third page of Exhibit 2 indicates that the State v. Victor Lewis James was concluded by plea, negotiated guilty on Counts 1 through 10. There was a prosecution order on Count 11. That's why I was trying to figure out what that was . . . . that appears to be the recidivist count pursuant to the special presentation that was provided in here. The document does then contain essentially the information as to all eleven

---

[4] This exhibit is attached as an appendix to this opinion.

counts, as well as the judgment and sentence—final disposition, I guess is what it's called, in the State of Georgia. . . .

So, with that said, I do change my position with regards to Exhibit Number 2 and do find that Exhibit 2 is admissible.[5]

Report of Proceedings (RP) at 94-95.

The court entered the following findings of fact, which are not disputed on appeal:

11. . . . Mathis . . . admitted to Sergeant Hunziker that he was in fact a convicted felon and had been convicted of the charges of armed robbery and burglary in Georgia. . . .

. . . .

14. . . . Mathis testified under oath at [the firearms] trial that he did not go by any other name, that he had not been convicted of any crimes out of Georgia, that he had a brother, from another mother but same father, with the name of Victor Lewis James. Mathis testified it was his brother Victor Lewis James that had been convicted in Georgia of burglary and armed robbery and again that he never been convicted. . . .

. . . .

20. Dewey determined that [the Georgia fingerprint card for James and the Washington fingerprint cards for Mathis] all had the same pattern types.

21. Dewey further determined that all 3 fingerprint cards/prints contained the same right thumb fingerprint.

22. Dewey testified that no two fingerprints are the same.

CP at 17-19.

---

[5] Because of an earlier objection, the State had limited exhibit 2 to a two-page submission. *See* RP at 36-37. The trial court's reference, earlier in this quote, to the third page was therefore error. Because the State had limited its submission to two pages, this is what was admitted.

From these and other findings, the trial court entered the following conclusions of law:

9.      Mathis [sic] testimony under oath at his trial on the [first degree UPFA] charges that he had never been convicted of the underlying predicate crimes for armed robbery and burglary nor convicted of any crimes are material statements.

10.      Sergeant Hunziker was a credible witness that provided testimony that positively and directly contradicted the testimony of Mathis, when Sergeant Hunziker testified that Mathis advised him that he had been previously convicted of the armed robbery and burglary charges out of Georgia.

11.      Jody Dewey of the Washington State Patrol Crime Lab provided testimony that the fingerprints of Victor James Mathis were the same as the individual convicted in Georgia for armed robbery and burglary.  This testimony was independent testimony that corroborated the testimony of Sergeant Hunziker and clearly contradicted the testimony of Mathis provided under oath that he was not the Victor Lewis James that was convicted of those offenses in Georgia.

12.      The testimony provided in this case was of such a character as to clearly turn the scale and overcome the oath of the defendant and the legal presumption of his innocence.

13.      Mathis knowingly made a materially false statement, knowing the statement to be false, under oath in an official proceeding when he testified falsely that he had never been convicted of the crime[s] of burglary and armed robbery out of Georgia.

CP at 21-22.

From these, the trial court determined that the State had proved beyond a reasonable doubt that Mathis committed perjury in the first degree.

*Perjury sentencing*

Defense counsel stipulated that Mathis's offender score was 9. The court then

said:

> I do find that the offender score of nine is appropriate based upon the
> stipulation of the parties and also with regards to viewing Mr. Mathis'
> criminal history, both for those offenses from the unlawful possession of
> firearm case in 18-1-17-20 points as well as the offenses out of Georgia
> being comparable offenses after doing both a legal and a factual analysis of
> those offenses. I do find that they are comparable offenses for making an
> offender score of nine in this case, standard range seventy-two to ninety-six
> months.

RP at 120. Defense counsel asked for Mathis's perjury sentence to run concurrent with

his firearm sentence. The prosecutor disagreed and argued that a concurrent sentence

would constitute an exceptional sentence downward. The trial court agreed and

sentenced Mathis to 84 months, to run consecutive with his 102 month firearm sentence.

Mathis timely appeals.

ANALYSIS

PERJURY: SUFFICIENCY OF THE EVIDENCE

Mathis contends the trial court erred in finding that the State's fingerprint evidence

and expert testimony were sufficient to meet the higher standard of proof for perjury

convictions. He alternatively argues the fingerprint card was inadmissible hearsay.

*Sufficiency of evidence*

The State must prove every element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Where sufficient evidence does not support a conviction, it cannot stand. *State v. Hummel*, 196 Wn. App. 329, 353, 383 P.3d 592 (2016). Insufficient evidence claims admit the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

"A person is guilty of perjury in the first degree if in any official proceeding he or she makes a materially false statement which he or she knows to be false under an oath required or authorized by law." RCW 9A.72.020(1). The State must present the testimony of at least one credible witness that directly contradicts the defendant's oath and another direct witness or "'corroborating circumstances established by independent evidence'" of such a character to overcome the defendant's oath and presumption of his innocence. *State v. Buchanan*, 79 Wn.2d 740, 744, 489 P.2d 744 (1971) (quoting *State v. Wallis*, 50 Wn.2d 350, 353, 311 P.2d 659 (1957)); *see also State v. Olson*, 92 Wn.2d 134, 136, 594 P.2d 1337 (1979). "The quantum of proof necessary to sustain a conviction of perjury is the highest known to the law, excepting only treason." *Buchanan*, 79 Wn.2d at 744.

*One credible witness directly contradicting the defendant's oath*

At his firearms trial, Mathis testified under oath that he had never been convicted of any crimes out of Georgia. He testified it was his twin half-brother, not him, who had been convicted in Georgia of burglary and armed robbery.

Sergeant Hunziker directly contradicted this. He testified that Mathis, after waiving his *Miranda* rights, "admitted to me he was a convicted felon and was convicted of armed robbery and burglary in Georgia." RP at 54. This testimony is sufficient to prove the first part of what the State was required to prove.

*Independent evidence of corroborating circumstances*

The State sought to prove the second part with documentary proof that Mathis had been convicted in Georgia of armed robbery and burglary. The State had a certified copy of the Georgia Department of Corrections fingerprint card admitted for this purpose.

Mathis argues the fingerprint card was insufficient evidence because it does not prove the existence of a prior felony conviction and because it was hearsay. We address the hearsay issue first.

### The card was admissible hearsay

The trial court admitted the fingerprint card under ER 803(a)(22) as a judgment of a previous conviction. We agree with Mathis that the fingerprint card is not a judgment.

10

Nevertheless, a trial court's ruling on the admissibility of evidence will not be disturbed if it is sustainable on an alternate ground. *State v. St. Pierre*, 111 Wn.2d 105, 119, 759 P.2d 383 (1988).

The State argues the card was admissible under ER 803(a)(8) as a certified copy of a public record. To be admissible under this hearsay exception, the document must (1) contain facts rather than conclusions that involve judgment, discretion or the expression of an opinion, (2) relate to facts that are of a public nature, (3) be retained for public benefit, and (4) be authorized by statute. *State v. Monson*, 113 Wn.2d 833, 839, 784 P.2d 485 (1989) (quoting *Steel v. Johnson*, 9 Wn.2d 347, 358, 115 P.2d 145 (1941)). We agree that the fingerprint card meets these criteria. *See* GA. CODE ANN. § 42-2-11 (directing Georgia Board of Corrections to promulgate administrative rules); GA. COMP. R. & REGS. 125-2-4-.05 (Georgia Department of Corrections must maintain inmate file records).

Mathis does not dispute that the fingerprint card is admissible under ER 803(a)(8). Rather, citing *State v. Ferguson*, 100 Wn.2d 131, 138, 667 P.2d 68 (1983), he argues the State may not argue a different evidentiary ground than argued to the trial court. However, *Ferguson* stands for the proposition that an appellate court will not *reverse* if a trial court admits evidence that could have been excluded had trial counsel objected on

11

the correct evidentiary basis. *Id.* *Ferguson* does not preclude us from *affirming* the admissibility of evidence on an alternate ground.

### *Evidence of "serious offense" conviction*

Mathis argues the fingerprint card is insufficient to establish he was convicted of any crime. We disagree.

Toward the top left, the fingerprint card bears a stamp that reads, "ADDITIONAL SENTENCE." Ex. 2. An inch or so below this, a section is entitled, "FINAL DISPOSITION." Ex. 2. In that section, various sentences are paired with various counts. A person is not sentenced unless convicted. We note there are five charges listed in the charges section and five sentences listed in the disposition section. The trial court correctly concluded the fingerprint card reflected criminal convictions.

Mathis next argues the fingerprint card omits any evidence he was convicted of burglary. We agree, but it does show Mathis was convicted of armed robbery. The question then is whether Mathis's first degree perjury conviction can stand without evidence he was convicted of burglary. It can.

As mentioned previously, first degree perjury requires proof that Mathis made a "materially false statement" while under oath. RCW 9A.72.020(1). There is no question that Mathis made a false statement while under oath. Mathis testified in his firearms trial

that he had never been convicted of any crimes out of Georgia. He testified it was his twin half-brother, not him, who had been convicted in Georgia of burglary and armed robbery. The fingerprint card showed that Mathis lied. It showed he had been convicted of at least five crimes, one of which was armed robbery. The only question is whether the false statement was material.

A "materially false statement" means "any false statement . . . which could have affected the course or outcome of the proceeding." RCW 9A.72.010(1). Had the jury believed Mathis—that it was his twin half-brother, not him, who had been convicted of crimes in Georgia—this certainly "could have" affected the outcome of the firearms trial. In fact, it would have. Without the Georgia convictions, the State could not have proved the first degree UPFA charges.

CONSECUTIVE SENTENCING

Mathis contends the trial court erred by ordering his perjury sentence to run consecutive to his firearms sentence. The State concedes this issue and recommends resentencing consistent with RCW 9.94A.589(3). For the reasons set forth below, we agree.

The sentencing statute at issue provides:

13

> [W]henever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

Former RCW 9.94A.589(3) (2015). In other words, the statute directs concurrent sentencing "when (1) a person who is 'not under sentence of a felony' (2) commits a felony and (3) before sentencing (4) is sentenced for a different felony." *State v. Shilling*, 77 Wn. App. 166, 175, 889 P.2d 948 (1995) (quoting former RCW 9.94A.400(3) (1990)[6]). The trial court has discretion to order a current sentence to run concurrently with, or consecutive to, a felony sentence previously imposed. *Id.* at 175-76. But only an express order of consecutive sentencing can overcome the statutory presumption of concurrent sentencing. *Id.* at 176.

Mathis committed perjury on August 9, 2018, during his trial for two counts of unlawful possession of a firearm. He was sentenced for those crimes on August 31, 2018. As such, he was not yet serving a felony sentence at the time of his perjury and RCW 9.94A.589(3) applies. For this reason, we remand for resentencing.

---

[6] Former RCW 9.94A.400 was recodified as RCW 9.94A.589 by LAWS OF 2001, ch. 10, § 6.

14

No. 36816-5-III
*State v. Mathis*

OFFENDER SCORE

Mathis contends he received ineffective assistance of counsel when his attorney agreed to his offender score of 9 at sentencing instead of challenging the comparability of several out-of-state convictions. He asks that we, for the first time on appeal, perform the comparability analysis of those out-of-state convictions.

The State responds that the comparability analysis of Mathis's prior out-of-state convictions should be performed at resentencing. We agree. The trial court is the best venue for conducting a thorough evidentiary hearing. We remand for this purpose.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                                                  Fearing, J.

15

FILED
Court of Appeals
Division III
State of Washington
2/6/2020 4:51 PM

GEORGIA DEPARTMENT OF CORRECTIONS

OFFENDER ADMINISTRATION

Offender Information Services

200 Sharon Rogers Drive

Jackson, Georgia, 30233

Mailing Address

Post Office Box 1529

Forsyth, Georgia 31029

Telephone: (770) 504-7312

Fax: (770) 504-7304

www.dcor.state.ga.us

**Brian P. Kemp**
*Governor*

**Timothy C. Ward**
*Commissioner*

STATE OF GEORGIA, COUNTY OF BUTTS

*TO WHOM IT MAY CONCERN:*

I, **Carol D. Sturdivant,** *certify that I am an assistant to the Commissioner, Corrections Division, Keeper of the Official Central Office inmate records, for the Department Of Corrections, and as such assistant, I am authorized to certify official inmate records of said Department.*

*This is to certify that the attached copies from the records of:*

**Name: JAMES, VICTOR LEWIS**
**GDC #: 522710**

*are true and correct copies from the Official Records of the Georgia Department of Corrections.*

*This the 1st day of April, 2019*

Sonya McCullough for

**Carol D. Sturdivant, Manager**
**Offender Information Services**
*Offender Administration*
*Corrections Division*



Case No: 18-1-00099-20
Exhibit No: 2  Marked: X  Admitted: X
Pla/Pet: X  Def/Rsp:  Clerk: SM
DATE: 5/6/2019

16

No. 36816-5-III
*State v. Mathis*
Appendix

